**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| GORSS MOTELS, INC., a Connecticut corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO: 1:16-CV-00330-HAB |
| | ) | |
| BRIGADOON FITNESS INC., an Indiana corporation, BRIGADOON FINANCIAL, INC., an Indiana corporation, and JOHN DOES 1-5, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO RECONSIDER DENIAL OF CLASS CERTIFICATION**

**I.      INTRODUCTION**

After previously being denied class certification, Gorss Motels, Inc. ("Gorss") now seeks a do-over.  Unfortunately for Gorss, the circumstances do not merit reconsideration of this Court's May 20, 2019 Opinion and Order denying class certification. (DE 96).  Neither the underlying facts nor law have changed so as to warrant reconsideration; nor is the Court's Order a manifest error of law or fact.  The individualized inquiries previously identified by the Court remain and "present[] the specter of unlimited mini-trials to determine the precise nature of the varying relationships and whether express permission had been granted."  (DE 96, Op. at 10).  Thus, because common issues do not predominate, Gorss still "has not satisfied its burden of demonstrating by a preponderance of the evidence that class certification is superior to other available methods for the fair and efficient adjudication of the controversy." (*Id.*).   Brigadoon Fitness Inc. and Brigadoon Financial, Inc. (collectively "Brigadoon") respectfully request that

this Court deny Gorss' motion to reconsider denial of class certification.

## II.    PROCEDURAL HISTORY

On September 13, 2016, Gorss filed its class action complaint, alleging Brigadoon

violated the Telephone Consumer Protection Act ("TCPA") by transmitting a single, unsolicited

facsimile advertisement that did not contain an "opt-out notice" as allegedly required by the

TCPA.  (DE 1, Compl. at ¶¶2, 4).  Based upon this single instance, Gorss filed a motion for class

certification on February 23, 2018, seeking to certify the following class:

> All persons or entities who were successfully sent a Fax on April 17, 2013 stating,
> "ANY 2 CARDIO = FREE SANITATION STATION," listing "Hotel Fitness A
> Brigadoon Fitness Company" as the vendor, and containing the phrase "Let Us
> Help You Design Your Fitness Room! 800.291.0403 Call today to talk to one or
> [*sic*] our trained experts."

(DE 57, Gorss Mot. at ¶4).

On April 16, 2018, Brigadoon filed its brief opposing Gorss' motion, arguing, among

other things, that Gorss failed to meet the Rule 23 requirements for class certification because

individualized inquiries as to each fax recipient's relationship with Brigadoon prevented any

common questions of fact from predominating and because Gorss could not establish that class

certification is superior to other available methods for resolving the controversy.  (DE 65, Defs.'

Br. at 12-19, 24-25).  In reply, Gorss argued that:  (1) any permission that Brigadoon received to

send the fax from hotel/motel franchisees as an approved supplier to their franchisors was

derivative and, somehow, not effective; and (2) the fax at issue must have told the recipients how

to opt-out of future faxes for Brigadoon to avail itself of the prior invitation or permission

defense.  (DE 74, Gorss Reply at 1-16).  Because Gorss raised new arguments in reply,

Brigadoon was granted leave to file a sur-reply. (DE 76, Order; DE 77, Defs.' Sur-Reply).  Gorss

was then granted leave to file a rejoinder. (DE 79, Order; DE 80, Gorss Rejoinder).

Between the close of briefing and entry of the Court's Order denying class certification,

several important decisions were handed down by courts across the country, including the

Seventh Circuit.  As such, Brigadoon filed notices with the Court to keep it apprised of the

developments in the TCPA junk fax arena.  First, Brigadoon filed a notice regarding the Ninth

Circuit's decision in *True Health Chiropractic, Inc. v. McKesson Corp.*, No. 16-17123, 2018 WL

3431723 (9th Cir. July 17, 2018), which agreed with the Sixth Circuit that the decision in *Bais*

*Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017) invalidating the Solicited Fax

Rule is binding on all circuits.  (DE 81, Supplement to Defs.' Br. at 1-2).  Next, Brigadoon

notified this Court of the Seventh Circuit's combined decision in *Brodsky v. HumanaDental Ins.*

*Co.* and *Alpha Tech Pet Inc. v. LaGasse, LLC*, 910 F.3d 285 (7th Cir. 2018), which affirmed the

district courts' denial of class certification in both cases for the very reasons Brigadoon opposes

class certification here and rendered moot Gorss' reply argument that solicited faxes require opt-

out language.[1]  (DE 87, Defs.' Notice of Supplemental Authority).  Lastly, Brigadoon notified

this Court of the Seventh Circuit's decision to deny plaintiffs' petition for rehearing or rehearing

en banc of the panel decision in *Brodsky* and *Alpha Tech Pet* and of the decision in *Gorss*

*Motels, Inc. v. AT&T Mobility LLC*, No. 3:17-cv-403, 2019 WL 625699 (D. Conn. Feb. 14,

2019), denying Gorss' motion for class certification on the basis that the question of permission

to send the fax at issue requires individualized inquiries of the putative class members.  (DE 91,

Defs.' Notice of Supplemental Authority at 1-2).  This extensive procedural history demonstrates

that this Court was made acutely aware of the issues and relevant authority.

On May 20, 2019, this Court denied Gorss' motion for class certification, holding that

determining which recipients of the facsimile provided prior permission would require an

individualized inquiry and, as a result, Gorss could not meet its burden under the predominance

---

[1] At the September 20, 2018 status conference (DE 86, Status Conference), the Court expressly recognized the importance of the *Brodsky* and *Alpha Tech* combined decision on Gorss' motion for class certification.

and superiority requirements of Rule 23.  (DE 96, Op. at 8-10).  Gorss now asks this Court to reconsider its Order.  However, the underlying facts have not changed, the legal authority has become even more favorable to Brigadoon, and the Court's Order is not a manifest error of law or fact.  Therefore, Gorss' final attempt to certify its untenable class should be denied.

### III.   MOTIONS TO RECONSIDER

The Federal Rules of Civil Procedure do not explicitly provide for motions to reconsider. *U.S. S.E.C. v. Nat'l Presto Indus., Inc.*, No. 02-C-5027, 2004 WL 1093390, at *1 (N.D. Ill. Apr. 28, 2004).  Although courts have the "inherent authority to modify interlocutory orders," *id.*, motions to reconsider are disfavored because "a re-do of a matter that has already received the court's attention is seldom a productive use of . . . resources." *United States v. Menominee Tribal Enters.*, No. 07-C-316, 2009 WL 1373952, at *1 (E.D. Wis. May 15, 2009).  Motions to reconsider are not a mechanism for parties "to revisit strategic decisions that prove to be improvident, to make arguments that could and should have been made in prior briefing, to express mere disagreement with a decision of the court, or to reprise or 'rehash' arguments that were rejected." *McCarty v. Menards*, 327 F.R.D. 177, 179-80 (N.D. Ill. 2018) (citations omitted).

Indeed, the Seventh Circuit has emphasized that "[a] court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure[,]" *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018), and that motions to reconsider should be granted only when there is a compelling reason. *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571–72 (7th Cir. 2006).  Such compelling reasons include "a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstood a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).  These issues "rarely arise and the motion to

reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d

1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99

F.R.D. 99, 101 (E.D. Va. 1983)).

## IV.   ARGUMENT AND AUTHORITY

Gorss merely disagrees with this Court's Order and rehashes two arguments that have

already been addressed:  (1) that Brigadoon allegedly failed to submit specific evidence of prior

express permission to receive the fax at issue; and (2) that Brigadoon is allegedly relying upon

permission derivatively through other hotel/motel chains and such permission is not allowed.

Gorss is wrong on both points, and its motion to reconsider should be denied.

First, Brigadoon submitted specific evidence of prior permission from the recipients of

the facsimile.  Indeed, Brigadoon obtained permission or received invitations from many

intended recipients of the fax at issue in multiple forms, including participation in the Wyndham

Approved Supplier Program, similar programs for non-Wyndham entities, existing and potential

customer requests, and hospitality industry trade conventions.  As discussed below, this is

substantially more evidence than the defendants produced in *Brodsky*—a case in which the

Seventh Circuit affirmed the denial of class certification.  To determine whether a fax was

solicited, the Court would be required to examine the relationship between Brigadoon and each

intended recipient, necessitating over 10,000 mini-trials on this one issue.

Second, in addition to receiving permission through past and present customers and

trade shows, Brigadoon, as a Wyndham (and other hotel chains') approved supplier, also

received permission through the contractual relationships between it, Wyndham (and other hotel

chains), and the thousands of franchisees.  Thus, Gorss' derivative consent discussion is

misplaced and, in fact, the single case Gorss relies upon on this question—*E&G, Inc. v. Mount*

*Vernon Mills, Inc.*, 316 F.Supp.3d 908 (D. S.C. 2018)—establishes that this Court's previous

denial of class certification was appropriate.  (DE 101, Gorss Br. at 14).  Under these

circumstances, as explained in *Brodsky*, the individualized issue of consent is central to this case

and predominates over any common issues.

**A.      Brigadoon provided sufficient evidence of prior permission to establish that common issues of fact do not predominate among the putative class members.**

This Court's Order was clear that Brigadoon "provided more than vague assertions about

prior permission and the methods used to obtain it."  (DE 96, Op. at 9).  Nonetheless, Gorss now

argues that the Court was wrong, alleging that Brigadoon's claim of permission to send the fax to

both Wyndham and non-Wyndham entities is "wholly conclusory, unsupported by any specific

evidence, and . . . nothing more than speculation."  (DE 101, Gorss Br. at 4, 11).  The Seventh

Circuit recently considered a nearly identical argument on plaintiffs' Petition for Rehearing or

Rehearing En Banc in *Brodsky* and *Alpha Tech*.[2]  In its Petition, the plaintiffs argued the Seventh

Circuit "misapprehended the factual basis of Defendants' claims of permission" and "Humana's

*only* claimed basis for permission is the language in the agency contract referring to an

'established business relationship.'"  (DE 89-1, *Brodsky* Pet. Reh'g at 14).  The Seventh Circuit

summarily denied the Petition, giving no weight to the plaintiffs' argument.  *Brodsky v.*

*HumanaDental Ins. Co.* and *Alpha Tech Pet v. LaGasse*, 910 F.3d 285 (7th Cir. 2018), *reh'g en*

*banc denied* (7th Cir. Feb. 20, 2019).  This Court, too, should give no credence to Gorss'

arguments that Brigadoon has failed to provide specific evidence of prior permission.

First, Brigadoon need not prove its permission defense at the class certification stage, and

Gorss' recitation of Brigadoon's ultimate burden of proof is meaningless.  *See Gorss Motels, Inc.*

*v. Safemark Sys.*, No. 6:16-cv-1638-Orl-31DCI, 2018 WL 1635645, at *5 n.5 (M.D. Fla. Apr. 5,

---

[2] Anderson + Wanca, the firm representing Gorss in the current action, represented the plaintiffs in *Brodsky* and *Alpha Tech*.

2018) ("The Court emphasizes that at the certification stage, the ultimate merits of the issue of consent . . . is not currently before the Court.  Instead, at this stage of the litigation, the Court must determine whether the issue of consent is a common issue with a common answer that predominates over any individual issues.").  Brigadoon has provided more than enough evidence to establish that common issues of fact will not predominate across the putative class members, and Gorss has "not proffered any viable method of determining individual consent which does not require individualized, fact-based 'mini-trials' for each potential class member, nor . . . made any persuasive showing that these mini-trials would not come to predominate this litigation if a class were certified."  *Gorss Motels, Inc. v. AT&T Mobility LLC*, No. 3:17-cv-403, 2019 WL 625699, at *6 (D. Conn. Feb. 14, 2019), *appeal denied*, No. 19-514 (2d Cir. July 2, 2019) (citing *Glatt v. Fox Searchlight Pictures*, 811 F.3d 528, 538 (2d Cir. 2016)).

Second, Brigadoon has provided evidence of prior permission from numerous sources. As a Wyndham approved supplier and participant in the Wyndham marketing programs, Brigadoon periodically received spreadsheets from Wyndham containing contact information about its franchisees, including fax numbers.[3]  (DE 58-4, Feldman Dep., Ex. 3).  Indeed, on April 15, 2013, Wyndham supplied the list forming a portion of the intended recipients of the facsimile in question, writing, "Please find attached the April 2013, Wyndham Hotel Group, International Manager and owner databases *for your organization's use and reference*."  (*Id.*).

Brigadoon was also an approved vendor for Interstate Hotels Group, Best Western, Choice Hotels, and La Quinta hospitality chains.  (DE 67-3, Feldman Decl. at ¶10).  Brigadoon had unique contractual relationships with each of these organizations that, in turn, had unique

---

[3] In addition to periodic spreadsheets, Wyndham provided Brigadoon with Property Improvement Plans that listed improvements needed to be made to specific franchisees' properties and included those franchisees' fax numbers. (DE 65-3, Feldman Decl. ¶10).

contractual relationships with their respective franchisees. (*Id.*).  All of the hospitality chains for which Brigadoon was an approved vendor supplied Brigadoon with contact information, including fax numbers, of their franchisees and authorized Brigadoon to use this information for purposes of doing business with the franchisees. (*Id.*).  Additional sources of permission include:  (1) existing customers whose contact information was housed in Brigadoon's accounting systems; (2) individual hotel and motel representatives who attended trade conventions and allowed Brigadoon to scan their identification badges with their contact information, and (3) the National Purchasing Network, a member-only network providing integrated procurement solutions—and concentrated purchasing power—for hotels across the country. (DE 64-1, Feldman Dep. at 51-52; DE 65-3, Feldman Decl. at ¶¶4, 10; DE 65-2, Gattuso Decl. at ¶¶9, 12-14).

The fax list included 3316 fax numbers Brigadoon obtained directly from Wyndham as part of the Sourcing Agreement, 602 fax numbers associated with current and previous Brigadoon customers whose contact information was stored in Brigadoon's Quick Books or Sage 500 accounting systems, 954 numbers from Choice Hotels, 153 numbers from La Quinta, 52 numbers from Best Western, 40 numbers from Interstate Hotels Group, 40 numbers from the National Purchasing Network, and at least 61 numbers from individual hotel/motel representatives that had attended trade conventions and contacted Brigadoon.[4]  (DE 64-1, Feldman Dep. at 50-52; DE 65-3, Feldman Decl. at ¶¶5, 7-9).  The fax list also included 8048 numbers from Brigadoon's internal Goldmine contacts database.  (DE 65-3, Feldman Decl. at ¶10).  Some overlap exists between the fax numbers included in the Goldmine database and

---

[4] The quantity of fax numbers obtained from trade shows is greater than 61, as evidenced by the size of the Goldmine database.  Contact information generated from trade shows is merged into Goldmine.  Therefore, the quantity of fax numbers obtained from trade shows and appear on the 2013 fax list is greater than the 61 fax numbers documented from the AAHOA trade show.  (DE 65-3, Feldman Decl. at ¶9).

those provided by past and present customers, Wyndham, Choice Hotels, La Quinta, Best Western, Interstate Hotels Group, and the National Purchasing Network.  (*Id.*).  Additionally, many fax numbers stored in the Goldmine database and appearing in the fax list were provided by other hotel/motel chains and individual hotels/motels directly through trade conventions, sales calls, and other means.  (*Id.*).  Gorss itself begrudgingly admits that trade show attendees may have consented to receiving Brigadoon's fax and, in order to determine whether businesses on the fax list had a relationship with Brigadoon, you would need to "start to call them." (DE 65-4, Gorss Dep. at 75-78).

Gorss resorts to sophistry in connection with the AAHOA trade show data presented by Brigadoon, claiming that "unidentified entities" asking to receive literature and identified for the first time in the Feldman Declaration cannot constitute express permission.  (DE 101, Gorss Br. at 6, 8).  First, when the data was identified is of no moment.  Discovery (though now stayed by agreement of the parties) is not closed and Gorss did not (because it had no basis for doing so) move to strike the Declaration and supporting data.  Second, the underlying spreadsheet (DX J) expressly identifies the entities at this trade show by name (column G), by city and state (columns L and M, respectively), and by the very fax numbers at issue in this lawsuit (column S).  (DE 77-1, AAHO spreadsheet at 2-4).[5]  Third, in addition to expressly and voluntarily providing their fax numbers to Brigadoon, the Wyndham franchisees spoke directly to the Brigadoon representatives working the trade show and expressed their permission for Brigadoon to, among other things, send them literature (*Id.*, AAHOA spreadsheet at columns S and X).  Thus, contrary to Gorss' unsupported argument, Brigadoon has identified multiple putative class

---

[5] Respecting confidentiality and personally identifiable information, Brigadoon's counsel redacted from what was filed with the Court the last name of the actual individual who communicated with Brigadoon at the show (column D), the street addresses and zip code (columns I-K, N), phone number (column Q), and email address (column T).

members who provided express permission to receive the faxed advertisement.  "Any number of franchisees" provided Brigadoon with their fax numbers when swiping their badges at the Brigadoon booth at a Wyndham convention that Gorss attended in 2013.  (DE 65-4, Gorss Dep. at 46-52).  And thousands more Wyndham (and non-Wyndham) franchisees provided their fax numbers directly to Brigadoon as evidenced by Brigadoon's own records and databases. Under no circumstances is Brigadoon duty-bound to prove at the class certification stage who all provided express consent.  Individualized inquiries on consent are required.

On even less evidence as presented here, the Seventh Circuit in *Brodsky* affirmed two different district courts that had concluded individual questions of consent predominated in junk fax cases. *Brodsky*, 910 F.3d at 286-88.  Importantly, the Seventh Circuit noted its agreement with three other Circuits on the need to distinguish between solicited and unsolicited faxes, finding "[t]he question of what suffices for consent is central, and it is likely to vary from recipient to recipient (or so the district court could have reasonably concluded)."  *Id.* at 291.  The court added that as to Brodsky and whether his specific agreement with Humana "fails to establish *his* consent, we do not know what kind of pre-existing arrangement may have existed between Humana and the other fax recipients that Brodsky wants to represent."  *Id.*  Finally, regarding consent, the Seventh Circuit determined that "[t]hese are the hallmarks of an issue that requires individual scrutiny."  *Id.* (citing *Howland v. First Am. Title Ins. Co.*, 672 F.3d 525, 534 (7th Cir. 2012) (holding that a "transaction-specific inquiry prevents class treatment.")).

The district court in *Brodsky* had decertified a class, focusing its analysis on the Agency Contract, finding that a substantial portion of the class was never a party to an Agency Contract, that some class members may have revoked their consent, and that the consent in the Agency Contract might not extend to other class members.  *Brodsky v. HumanaDental Ins. Co.*, 269

F.Supp.3d 841, 846-49 (N.D. Ill. 2017), *aff'd*, 910 F.3d 285 (7th Cir. 2018), *reh'g en banc denied*

(7th Cir. Feb. 20, 2019).  Making the exact same argument as here, plaintiffs argued that the

defendants' consent evidence was speculative and insufficient at the class certification stage.

The Seventh Circuit twice rejected that argument, concluding with its summary denial of

plaintiffs' petition for rehearing or rehearing en banc.  *Id.*  Unlike the defendants in *Brodsky*,

Brigadoon's evidence extends beyond merely a contractual relationship.  Brigadoon obtained

permission through numerous sources, and this evidence has clearly been established.

Other courts have held a defendant's relationship with Wyndham and the plaintiff, in

addition to other contextual evidence, is sufficient to defeat Gorss' class certification bid.  In one

such case, Gorss argued that the defendant had failed to establish a question as to whether fax

recipients provided prior consent.  *Gorss Motels, Inc. v. Eric Ryan Corp.*, No. 3:17-cv-00126,

2019 U.S. Dist. LEXIS 59537, at *11 (D. Conn. Mar. 28, 2019), *appeal denied*, No. 19-944 (2d

Cir. July 2, 2019).  The court rejected this argument and highlighted the numerous issues that

would require individualized review, including:

> [W]hether franchisees consented to receiving the Fax by providing their fax number
> to Wyndham or otherwise; whether individual franchise agreements expressly
> provide consent for the franchisee to be contacted by fax; whether putative class
> members contacted or were actual direct customers of Eric Ryan, and provided Eric
> Ryan with their fax numbers, thereby providing additional consent; and whether
> there are records that exist showing individual franchisees agreed to participate in
> WSSI marketing programs, thereby providing consent.

*Id.* at *11-12; s*ee also Gorss Motels, Inc. v. Otis Elevator Co.*, No. 3:16-cv-1781, 2019 WL

1490102, at *5 (D. Conn. Apr. 4, 2019), *appeal denied*, No. 19-1040 (2d Cir. July 2, 2019)

("Defendant identifies types of evidence germane to the question of consent, to include, for

example, the Franchise Agreement, the nature and scope of the Approved Supplier Program, and,

in the case of Gorss itself, the Property Improvement Plan[.]"); *AT&T Mobility LLC*, 2019 WL

625699, at *6 ("Defendant has suggested a variety of potential sources of individual consent . . .

and has submitted evidence in support of those sources, including a wireless customer agreement

. . . and Wyndham franchisee agreements and consent forms.").  Brigadoon has provided this

exact type of evidence, and the types of individualized questions identified by these courts will

predominate in this case.

Brigadoon's evidence provides more than vague assertions about prior permission; it sets

forth "specific evidence showing that a significant percentage of the putative class consented" to

Brigadoon's fax, *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 318 F.R.D.

712, 725 (N.D. Ill. 2016), and establishes the need to examine each fax recipient's relationship

with Brigadoon, which "is sufficiently individualized to preclude class certification."  *Alpha

Tech Pet v. LaGasse, LLC*, Nos. 16-C-513 & 16-C-4321, 2017 WL 5069946, at *5 (quoting

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 469 (6th Cir.

2017)).  These are precisely the individualized issues that this Court correctly recognized as

preventing common issues from predominating.

**B.** **Brigadoon's permission to send the fax was not obtained derivatively, but rather obtained directly from numerous sources, including through its relationship as a Wyndham Approved Supplier, attendance at trade shows, and existing customers.**

Ignoring Brigadoon's evidence establishing it directly obtained permission to send the

facsimile from various sources, Gorss maintains that Brigadoon is derivatively relying on

permission obtained by other hotels and entities.  Plainly, Gorss is wrong, and the Seventh

Circuit has addressed this issue head-on.  In *CE Design v. King Architectural Metals, Inc.*, 637

F.3d 721 (7th Cir. 2011), the plaintiff made itself a part of the *Blue Book*, a third party directory

for the construction industry that published subscribers' fax numbers, and specifically consented

to receive faxes from anyone who used the directory when it filled out the form for the directory.

637 F.3d at 725.  The Seventh Circuit vacated the district court's Order certifying a TCPA junk

fax class, finding that typicality may be destroyed because CE Design was "vulnerable to the

defense of invitation or permission." *Id*. at 728.  In so doing, the court noted that "[b]y giving its

fax number to the *Blue Book* for publication, CE publicized the number to the *Blue Book's* other

subscribers.  The *Blue Book* brings together companies in construction, civil engineering, and

architecture to facilitate their marketing to one another." *Id*. at 726.

Like CE Design, Gorss made its fax number available through its participation in the

Wyndham Approved Supplier program and never once objected to receiving faxes from

Approved Suppliers like Brigadoon.  (DE 65-4, Gorss Dep. at 17-18, 21, 23-25 and Ex. C; DE

65-5, Super 8 Worldwide Directory at 11).  The Wyndham Approved Supplier program brings

together companies in the hospitality industry to facilitate doing business with one another.  (DE

65-2, Gattuso Decl. at ¶¶3-9).  By virtue of its contractual relationship with Wyndham and

Wyndham's approved suppliers, among other reasons, Gorss and the putative class solicited the

fax at issue and Brigadoon did not derivatively obtain permission to send the fax.

The analysis does not end there.  All of the information needs to be considered as a whole

and the determination of what constitutes permission or invitation must be made on a case-by-

case basis.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of

1991*, 18 FCC Rcd. 14014, 14129 (F.C.C. 2003) ("It [is] appropriate to treat the issue of consent

in any complaint regarding unsolicited facsimile advertisements on a case-by-case basis.").  The

FCC regulations further provide that "the fact that [a] facsimile number was made available in a

directory, advertisement or website does not *alone* entitle a person to send a facsimile

advertisement to that number." *In re Rules and Regulations Implementing the Telephone

Consumer Protection Act of 1991*, 21 FCC Rcd. 3787, 3796 (F.C.C. 2006) (emphasis added).  In

addition to making its number available through participation in the Wyndham Approved

Supplier program, Gorss repeatedly made its fax number publicly available to Wyndham

suppliers (among others), thereby inviting facsimiles like that at issue here.  A court denied

Gorss' motion for class certification in a similar case for this exact reason.  *See Gorss Motels,*

*Inc. v. Safemark Sys., LP*, No. 6:16-cv-01638-Orl-31DCI, 2018 WL 1635645, at *5 (M.D. Fla.

Apr. 5, 2018) (entering into franchise agreements with Wyndham and providing fax numbers on

multiple occasions during the course of their relationship "at the very least, raises a question as

to whether Plaintiffs consented to receiving the faxes from . . . Safemark.").  Safemark also

submitted evidence that many of the fax recipients were current or former Safemark customers

that provided their fax numbers directly to Safemark or provided their fax numbers via

Wyndham trade conventions.  *Id.*  Ultimately, the *Safemark* court held that because "the issues of

consent cannot be resolved without individualized inquiry, . . . common issues of fact do not

predominate and that class certification is inappropriate."  *Id.* at *6.

    The same is true here.  Prior to the April 2013 broadcast, Gorss repeatedly provided its

fax number to Wyndham and to Wyndham approved suppliers.  (DE 65-4, Gorss Dep. at 23-25;

DE 65-5, Super 8 Worldwide Directory 2011).  Brigadoon received prior invitation or

permission to send faxes from numerous different sources, including the Wyndham franchise

agreements, trade conventions, existing customer relationships, and other hotel/motel chains.

(DE 64-1, Feldman Dep. at 51-52; DE 65-2, Gattuso Decl. at ¶¶7-9).

     Gorss relies upon a single case to support its argument that, as a matter of law,

Brigadoon cannot rely upon the contractual relationships it has as an approved vendor with

Wyndham and multiple other franchisors (*e.g.,* Choice, La Quinta, Best Western, etc.) and their

franchisees to establish permission or invitation. (DE 101, Gorss Br. at 13-14).  That case, *E&G,*

*Inc. v. Mount Vernon Mills, Inc.*, 316 F.Supp.3d 908 (D. S.C. 2018), demonstrates why this

Court correctly denied Gorss' prior motion for class certification and why Gorss' motion to

reconsider should be denied.[6]   There, the court denied Mount Vernon Mills' motion for

summary judgment on the consent issue, noting that although Mount Vernon may ultimately

prevail on the argument that consent was provided as a part of the Wyndham

franchisor/franchisee/approved vendor relationship:

> [A]n issue of fact remains as to whether express invitation or permission was given
> to Plaintiff by Mount Vernon. It is not for the Court to decide credibility, weigh the
> evidence, or decipher the nature, contours, and import of the various agreements
> and any permissible actions which may be implicated by this unique set of facts.
> Mount Vernon has not established as a matter of law the initial threshold issue
> concerning whether the fax was solicited (or not).

*Id.* at 912.  The court found that Mount Vernon's argument that it had express consent to send

faxed advertisements to E&G by virtue of the franchisor/franchisee/approved vendor relationship

was "reasonable and logical," and indeed "odd" that a franchisee would consent to receiving

information about approved vendors and then complain when the vendor supplies such

information.  *Id.* at 911.

Summary judgment was denied as to E&G's *individual* claim based on questions of fact

regarding "the unique set of facts" including testimony from a Mount Vernon employee on the

lack of prior express permission and "the nature, contours, and import of the various

agreements."[7]  *Id.* at 911-12. This case demonstrates the countless individualized inquiries to be

resolved as to the putative class Gorss seeks to certify.  Indeed, it is not just the relationship

between Brigadoon, Wyndham (and its multiple subsidiaries), and the franchisees to be explored,

but also the relationships between Brigadoon, all of the other franchisors and purchasing

networks, and all of their franchisees whose contracts, communications, trade show attendance,

---

[6] E&G was represented in *Mount Vernon Mills* (and in *Safemark* where it was a named plaintiff with Gorss) by Gorss' present counsel.

[7] E&G's initial class certification motion was denied without prejudice to refiling. *Mount Vernon Mills*, 316 F.Supp.3d at 910.

and practices regarding publishing their fax numbers that need to be placed in context and addressed.  This case, the other Gorss cases, and the controlling Seventh Circuit cases, *Brodsky* and *CE Design*, establish that this Court correctly found the question of consent predominates and Gorss' motion to reconsider should be denied.

This Court correctly noted that it would be required to analyze each recipient's relationship with Brigadoon and whether that recipient provided prior permission to receive the fax.  This analysis extends beyond a recipient's franchise relationship with Wyndham.  The fax at issue was sent to other hotels for which Brigadoon was an approved vendor, hotel representatives that had attended trade conventions and requested information from Brigadoon, non-Wyndham entities, and current and previous Brigadoon customers.  (DE 64-1, Feldman Dep. at 50-52; DE 65-3, Feldman Decl. at ¶6).  Determining whether a recipient provided prior permission to receive, or invited, the fax at issue will require cross-referencing fax numbers against Brigadoon's internal database, sales records, convention records, lists associated with various hotel chains, and other records, and conducting discovery directly to each of the alleged 10,490 recipients.  (DE 65-3, Feldman Decl. at ¶6).  This Court was keenly aware of this and correctly held that "[t]he proposed class is not sufficiently cohesive to warrant adjudication by representation."  (DE 96, Op. at 10).

Even if the Court had found Gorss and the other franchisees that make up the putative class did not give permission through their relationship with Wyndham (or other franchisors), individualized inquiries would still predominate.  The Court would be required to determine whether the Wyndham franchisees provided permission to receive the fax through other means.  As discussed previously, Brigadoon received permission to send the facsimile directly through various means, and these means are not mutually exclusive.  For example, Wyndham franchisees

may have provided permission through its participation in the Wyndham Approved Supplier

program as well as by attending trade shows at which Brigadoon operated a booth.

Alternatively, the recipients may have been an established customer of Brigadoon and provided

permission through that relationship.  Ultimately, individualized inquiries predominate,

necessitating mini-trials on this issue, and the Court did not misapprehend the evidentiary record

and its Order is not a manifest error of law and fact.  Therefore, class certification is

inappropriate.

## V.     CONCLUSION

For the reasons explained above, Brigadoon Fitness Inc. and Brigadoon Financial, Inc.

respectfully request that this Court deny Gorss Motel, Inc.'s motion to reconsider denial of class

certification.

Respectfully submitted,


*/s/ D. Randall Brown*
D. Randall Brown (15127-49)
randy.brown@btlaw.com
Jason T. Clagg (24123-02)
jason.clagg@btlaw.com
**BARNES & THORNBURG LLP**
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802-2206
Telephone:  (260) 423-9440
Facsimile:  (260) 424-8316

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2019, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which sent notification of such filing to all attorneys of

record.


*/s/ D. Randall Brown*