UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GORSS MOTELS, INC., a Connecticut corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 1:16-CV-330-HAB |
| BRIGADOON FITNESS INC., an Indiana corporation, BRIGADOON FINANCIAL, INC., an Indiana corporation, and John Does 1–5, | ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

In April 2013, Defendant Brigadoon Fitness, Inc., a licensed distributor of commercial fitness equipment and accessories to the hospitality industry, sent a one-page fax advertising its services to thousands of hotel and motel franchisees. Plaintiff, a former Wyndham franchisee that operated a Super 8 motel, claims to have received this "junk fax." Over three years later, Plaintiff filed a lawsuit against Brigadoon for the lost use of its fax machine, paper, and ink toner and the wasted expenditure of time.

Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act (TCPA) of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, by sending an unsolicited fax advertisement. Plaintiff seeks to certify a putative class of all 10,490 Brigadoon fax recipients.

The Court previously denied Plaintiff's motion for class certification. Plaintiff asks the Court to reconsider its ruling or, alternatively, to certify a class consisting of recipients of the April 2013 fax whose numbers were obtained from "the Wyndham Fax List." This alternatively defined class would include only those recipients of the fax who were, like Plaintiff, Wyndham franchisees, and were included in a fax list that Wyndham supplied to Brigadoon due to its status as a Wyndham approved supplier.

This Opinion and Order considers both motions and determines whether this case should be certified as a class action, either as defined in Plaintiff's original request and argued in the Motion to Reconsider Denial of Class Certification [ECF No. 100], or as more narrowly defined in its Amended Motion for Class Certification [ECF No. 102].

**FACTUAL BACKGROUND**

In August 2012, Brigadoon acquired Hotel Fitness Club, Inc., and continues to operate under the Hotel Fitness name. At the time of this acquisition, Hotel Fitness was subject to a Sourcing Agreement with Worldwide Sourcing Solutions, Inc. ("WSSI"), a wholly-owned subsidiary of Wyndham Worldwide Corporation and an affiliate of Wyndham Hotel Group, LLC ("Wyndham").

Wyndham is party to multiple franchise agreements in the hospitality industry and assists WSSI in negotiating contracts with various third parties. Brigadoon's acquisition of Hotel Fitness made it a party to the Sourcing Agreement, which allowed it to sell fitness equipment to Wyndham franchisees through various Wyndham marketing programs. Periodically, Brigadoon received customer information from Wyndham, including fax numbers, for Wyndham franchisees. On April 15, 2013, Wyndham supplied

the list forming a portion of the intended recipients of the facsimile in question (the "Wyndham Fax List"), writing: "Please find attached the April 2013, Wyndham Hotel Group, International Manager and owner databases for your organization's use and reference." (ECF No. 58-4, Feldman Dep. Ex. 3.)

In addition to periodic spreadsheets, Wyndham provided Brigadoon with performance improvement plans (PIPs) that listed improvements needed to be made to specific franchisees' properties and included those franchisees' fax numbers. (DE 65-3, Feldman Decl. ¶10). A franchisee who entered into a PIP agreed that select portions of the PIP could be provided to Wyndham's approved vendors for the purpose of their offering products and services that were required to complete the PIP.

Brigadoon also had contractual relationships with other entities such as Interstate Hotels Group, Best Western, Choice Hotels, and La Quinta chains, each of which had their own contractual relationships with franchisees. These hospitality chains also periodically provided Brigadoon with franchise information, including fax numbers.

Plaintiff is a former Wyndham franchisee that operated a Super 8 motel. As part of its relationship with Wyndham, Plaintiff made some of its information available for directories, including its fax number. As a result, members of the public were able to contact Plaintiff along with other Wyndham franchisees. Plaintiff, through Steven Gorss, also attended annual conventions where he provided contact information to Wyndham-approved suppliers, including a convention that took place in 2012.

Gorss alleges that he received an unsolicited fax from Brigadoon on April 17, 2013, as part of a broadcast that successfully transmitted via fax to over 10,000 recipients. The

organized fax broadcast was coordinated in April 2013. Brigadoon's Kevin Feldman provided WestFax with a fax list (the "April 2013 Fax List"). Brigadoon synthesized the April 2013 Fax List from numbers it obtained from Wyndham as part of the Sourcing Agreement; existing or potential customers with whom Brigadoon had previously interacted with over the telephone, via email, or at industry trade conventions; franchisees of major hotel chains with which Brigadoon had vendor status; and hotels operating under common management or that were members or customers of a large purchasing network known as the National Purchasing Network. Brigadoon had a regular and established practice of doing business via fax with its past and present customers, who requested that Brigadoon send information by fax.

On April 17, 2013, with the contact information Brigadoon provided, WestFax attempted to transmit the broadcast, as evidenced by the fax broadcast report and invoice. Gorss' expert opines that from this list about 10,500 faxes were successfully sent, including 3,316 fax numbers belonging to Wyndham franchisees from the Wyndham Fax List. However, the Wyndham Fax List includes fax numbers from Wyndham franchisees with whom Brigadoon also had pre-existing relationships. The Wyndham Fax List includes fax numbers that also appear in Brigadoon's internal Goldmine contacts database, fax numbers associated with then current and previous Brigadoon customers whose contact information was stored in Brigadoon's Sage 500 accounting system, and fax numbers from individual hotel/motel representatives that had attended an industry trade convention and shared contact information with Brigadoon.

## ANALYSIS

Plaintiff requests that the following class be certified:

All persons or entities who were successfully sent a Fax on April 17, 2013 stating, "ANY 2 CARDIO = FREE SANITATION STATION," listing "Hotel Fitness A Brigadoon Fitness Company" as the vendor, and containing the phrase "Let Us Help You Design Your Fitness Room! 800.291.0403 Call today to talk to one or [sic] our trained experts."

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To merit certification, a putative class must satisfy the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate representation—plus fit within one of the three types of classes listed in Rule 23(b). Rule 23(b)(3) classes—the kind at issue here—must meet predominance and superiority requirements, that is, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members" and class treatment must be "superior to other available methods." Fed. R. Civ. P. 23(b)(3).

"Predominance is a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). The proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common

question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and brackets omitted).

The TCPA only prohibits faxed advertisements that are "unsolicited," and the TCPA defines an "unsolicited advertisement" as one sent without "prior express invitation or permission." 47 U.S.C. § 227(a)(5). The issue of prior express invitation or permission is of critical importance in this litigation, and will predominate over other issues, such as whether the fax was an advertisement. Accordingly, the Court will not find that Rule 23(b)(3) predominance is satisfied unless the issue of prior express invitation or permission is a "common, aggregation-enabling" issue. *Bouaphakeo*, 136 S. Ct. at 1045.

Whether a fax recipient expressly consented to receive fax advertisements must be assessed "on a case-by-case basis" and express permission requires "that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (internal quotation marks and emphasis omitted) (quoting In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C.R. 14014, 14129 (F.C.C. 2003), 2003 WL 21517853); *see also Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018) ("When a recipient voluntarily provides a contact number, she provides express consent to receive material 'relate[d] to the reason why [she] provided [her] . . . number in the first place.'"). The statute does not require a specific form of

6

invitation or permission. *CE Design*, 637 F.3d at 726; 42 U.S.C. § 227(a)(5) (stating that it can be "in writing or otherwise").

The Court finds, as it did previously, that questions of prior express invitation or permission are individual inquires that predominate over common issues. In so holding, the Court joins a growing number of courts that have declined to certify TCPA claims brought by hotel franchisees against product suppliers. For example, in *Gorss Motels, Inc. v. Otis Elevator Co.*, the court found that the Rule 23(b) predominance analysis was dispositive and precluded certification of a class of Wyndham franchisees who received a promotional "Fax Blast." No. 3:16-CV-1781 (KAD), 2019 WL 1490102 (D. Conn. Apr. 4, 2019). The court reasoned:

> While some of the evidence might constitute generalized proof that is equally applicable to each class member, the relationship, whether contractual or otherwise, between and among each recipient — i.e., Wyndham, WSSI, Otis, and perhaps others — will need to be assessed on an individualized basis. Indeed, the Defendant has identified many putative class members with whom it had a pre-existing relationship. The nature of any such relationship is directly probative on the issue of consent. And an individualized inquiry into any prior communications, to include their frequency, nature or content, between the class members and the Defendant would likewise be required. Consent is, after all, something communicated from one party to another. In sum, it is clear to this Court that the individualized inquiry that would need to be undertaken by the Court is precisely the type of inquiry that makes this putative class unsuitable for certification.

*Otis Elevator*, 2019 WL 1490102, at *5 (D. Conn. Apr. 4, 2019).

Similarly, in *Gorss Motels Inc. v. A.V.M. Enterprises, Inc.*, No. 3:17-CV-01078 (KAD), 2019 WL 4278951, at *4 (D. Conn. Sept. 10, 2019), the court concluded that whether each class member consented to receive the fax was an individualized inquiry that was more

substantial than any questions which might be answered with generalized proof. The inquiry would require examination of the nature and scope of each putative class member's contractual relationships with and obligations to Wyndham to determine whether that member consented to receiving fax advertisements from approved suppliers. *Id.* "In addition, the fact-finder might need to consider any written or oral communications between the franchisee and Wyndham concerning the dissemination, by Wyndham, of product advertisements for approved suppliers, which, potentially, could involve the testimony at trial of each franchisee." *Id.* Additionally, because defendant had submitted evidence that it had an ongoing relationship with many Wyndham properties and received fax numbers directly from those franchisees who wanted leads about its products and any sales, the nature of those relationships and specific communications would require examination upon individualized proof. *Id.*

In *Gorss Motels, Inc. v. AT&T Mobility LLC*, No. 3:17CV403 (JBA), 2019 WL 625699, at *6 (D. Conn. Feb. 14, 2019), the defendant had suggested a variety of potential sources of individual consent to receive the challenged fax, such as through service contracts and Wyndham franchisee agreements and forms. The court declined to certify the matter as a class action because the plaintiff had "not proffered any viable method of determining individual consent which does not require individualized, fact-based 'mini-trials' for each potential class member, nor has Plaintiff made any persuasive showing that these mini-trials would not come to predominate this litigation if a class were certified." *Id.*

The Court has also considered TCPA class certification rulings outside the context of a hotel franchisee suing a product supplier. For example, in *Gene & Gene LLC, v. BioPay,*

*LLC*, defendant "culled fax numbers from purchased databases but also . . . various other sources—from information submitted by merchants through BioPay's website, from information submitted at trade shows BioPay attended, and also from lists of companies with which BioPay or its affiliates had an established business relationship." 541 F.3d at 328. This, the court determined, distinguished the case from another TCPA suit where class certification had been granted for the recipients of an unsolicited fax advertisement. In that case, there were no questions of individual consent because defendant "had obtained all of the fax recipients' fax numbers from a single purveyor of such information and because, given this fact, [plaintiff] was able to propose a novel, class-wide means of establishing the lack of consent based on arguably applicable federal regulations." *Id.* at 327–28.

As in the cases cited above, determining which of the hundreds of customers in Brigadoon's accounting system provided permission for Brigadoon to send facsimiles, and the status of any permission, would require examination upon individualized proof. Likewise, determining whether the fax numbers obtained from attendees of trade conventions were the result of prior permission would require inquiry into each attendee's circumstances and specific communication. Some attendees gave Brigadoon oral permission that was memorialized in Brigadoon's database. Brigadoon was also an approved vendor for other hotel chains and obtained fax numbers through a National Purchasing Network. The overlap, or combination, of any of these potential sources of individual consent, as well as consideration of any franchise agreement language, would further impact the inquiry. *See, e.g.*, *CE Design*, 637 F.3d at 725 (recognizing that a

9

combination of actions might have added up to plaintiff's express invitation or permission to receive the fax advertisement).

Limiting the class to only the Wyndham franchisees would not eliminate the need for an individualized inquiry. The Wyndham Fax List includes franchisees operating under more than ten different franchise agreements (e.g., Super 8, Ramada, Howard Johnson, Travelodge, etc.). The specific language used in each contract, combined with other factors, will drive the consent inquiry. *See, e.g.*, *CE Design Ltd.*, 637 F.3d at 725 (finding arguable defense on issue of consent where plaintiff posted fax number on website with phrase "contact us" and authorized the publication of its fax number in a directory aimed at firms in the building industry, which authorized the other subscribers to the publication, like defendant, to "communicate" with it, including via fax); *Gorss Motels, Inc. v. Safemark Systems*, 931 F.3d at 1097 (analyzing a franchise agreement that required plaintiffs to "purchase or obtain certain items only from" approved suppliers, such as the defendant, to determine issue of express permission); *E & G, Inc. v. Mount Vernon Mills, Inc.*, 316 F. Supp. 3d 908, 912 (D.S.C. 2018) (denying summary judgment on issue of prior consent to receive fax where plaintiff entered into franchise agreement because it was "not for the Court to decide credibility, weigh the evidence, or decipher the nature, contours, and import of the various agreements and any permissible actions which may be implicated by this unique set of facts").

The Wyndham Fax List is not limited to fax numbers that were previously unknown to Brigadoon. It includes fax numbers of Wyndham franchisees who were past or present Brigadoon customers or attended trade shows and permitted Brigadoon to

obtain their contact information. Thus, appearance on the Wyndham Fax List does not mean that generalized, class-wide proof will determine whether the franchisee provided prior express invitation of permission. Like Gorss, the various Wyndham franchisees have their own individual circumstances regarding publishing their fax number in directories, entering into Wyndham Property Improvement Plans, and permitting or inviting fax communications from Wyndham approved suppliers.

The Court does not find, as Plaintiff argues, that to avoid class certification Brigadoon must specifically identify a member of the proposed class that provided prior express permission or produce a log that compiles all prior express permissions. Brigadoon has shown that the fax numbers were obtained from a variety of sources. Plaintiff, who has the burden of establishing that class certification is appropriate, must proffer a viable method of determining a recipient's consent that does not require individualized, fact-based mini-trials for each potential class member. Answering the bona fide issue of whether a particular fax was solicited—as Plaintiff argues Brigadoon must do at this stage—would require an individualized inquiry. This is telling because the method of determining the answer, not the answer itself, is the driving consideration under Rule 23(b). *See Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 819 (7th Cir. 2012) (noting that Rule 23(b)(3) requires common evidence and methodology, but not common results).

As stated in its previous Opinion and Order, this case differs from the scenario where a defendant, who had not reviewed the fax list, attempted to "defeat class certification by asserting the vague possibility that some of the individuals on the

anonymous lists" procured by an entity that did not seek permission to send the faxes "may have perchance consented to receiving the fax." *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009). The circumstances by which Brigadoon obtained the fax numbers, as well as the evidence it produced, are readily distinguishing aspects of this case.

This case also bears little resemblance to *Bridging Communities Inc. v. Top Flite Financial Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016), which Plaintiff cites for its reversal of the district court's denial of class certification for lack of predominance because the court was unwilling to allow "speculation and surmise to tip the decisional scales in a class certification ruling." In *Bridging Communities*, plaintiff "presented evidence suggesting a class-wide absence of consent." 843 F.3d at 1125. The evidence was that a fax advertising company, B2B, who purchased a list of fax numbers from another company, InfoUSA, failed to contact anyone on the purchased list to verify consent prior to faxing them advertisements on behalf of B2B's clients, which included defendant. *Id.* at 1122. In response to this evidence of B2B's business practice, defendant "merely alleged that class members *might* have given consent in some other way," but it "did not offer any information or evidence to support that theory." *Id.* at 1125.

The facts of this case leave Plaintiff unable to articulate a theory of generalized proof, and as a result, the litigants' efforts on individual questions of whether each class member consented will overwhelm any common questions the class might share. The result would be the type of mini-trials that class actions are designed to avoid. "If resolving a common issue will not greatly simplify the litigation to judgment or

settlement of claims of hundred[s] or thousands of claimants, the complications, the unwieldiness, the delay, and the danger that class treatment would expose the defendant or defendants to settlement-forcing risk are not costs worth incurring." *Parko*, 739 F.3d at 1085.

## CONCLUSION

For the reasons stated above, the Court DENIES the Motion to Reconsider Denial of Class Certification [ECF No. 100] and DENIES the Amended Motion for Class Certification [ECF No. 102].

SO ORDERED on November 4, 2019.

                                         s/ *Holly A. Brady*
                                         JUDGE HOLLY A. BRADY
                                         UNITED STATES DISTRICT COURT