UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GORSS MOTELS, INC., a Connecticut corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   CASE NO.: 1:16-CV-330-HAB |
| BRIGADOON FITNESS INC., an Indiana corporation, BRIGADOON FINANCIAL, INC., an Indiana corporation, and JOHN DOES 1–5, | ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

In 1944, vaudesvillian Jimmy Durante made popular the phrase "the guy's making a federal case out of it."[1] The expression is particularly apropos in the present case as Gorss Motels ("Gorss") received a single facsimile transmission from Defendants Brigadoon Fitness, Inc. and Brigadoon Financial, Inc. (collectively, "Brigadoon") and literally made it a federal case. Gorss filed this federal lawsuit[2] seeking redress for the offense under the Telephone Consumer Protection Act (TCPA) of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227.[3]

---

[1] *See generally,* https://en.wikipedia.org/wiki/Jimmy_Durante and http://democracythemepark.org/making-a-federal-case-out-of-it/.

[2] As is evident in the caption, Gorss brought this action individually and as a representative of a proposed class. This Court denied Gorss' motion for class certification (ECF No. 96), as well as its motion to reconsider and its amended motion for class certification (ECF No. 126). Additionally, Gorss named JOHN DOES 1-5 as defendants. Gorss has not subsequently identified the DOE defendants and discovery has closed. Accordingly, the Court deems the claims against JOHN DOES 1-5 abandoned and DISMISSES them from the case. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) (failure to identify John Doe defendants prior to close of discovery and serve them with process subjects the Doe defendants to dismissal).

[3] This is one of many suits filed by Gorss alleging similar conduct against other entities. This Court previously acknowledged, "Gorss can fairly be classified as a professional class action plaintiff, having

Presently before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 129, 133). The motions have been fully briefed and supplemented (ECF Nos. 134, 140, 145–148), and are ripe for consideration.

## APPLICABLE STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the

---

been the named plaintiff in at least seventeen TCPA lawsuits throughout the United States." (ECF No. 143 at 3).

evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

The fact that the parties have filed cross-motions for summary judgment does not alter the standard. When evaluating each side's motion, the court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### FACTUAL BACKGROUND[4]

Beginning in the fall of 1988, Gorss began operating a Super 8 Motel pursuant to a series of franchise agreements, originally with Super 8 Motels, then with Super 8 Worldwide, Inc. (collectively, "Super 8").[5] Wyndham Hotels Group, LLC which, in turn, is owned by Wyndham Worldwide Corporation (collectively "Wyndham"), eventually acquired Super 8 Worldwide, Inc. Defendant Brigadoon sells commercial fitness equipment, accessories, and related items to the hospitality industry. Brigadoon, as a party to a separate agreement with Wyndham, became a Wyndham approved supplier to provide its commercial fitness equipment to Wyndham affiliates, including Gorss. To this end, on April 17, 2013, Brigadoon, through its fax broadcaster, sent a facsimile transmission to Gorss' subscribed fax line advertising its products. ("the 2013 Fax").

a. The Franchise Agreements

Super 8/Wyndham and Gorss entered into three separate franchise agreements: a 1988 Franchise Agreement spanning 20 years (1988 Agreement); a 2009 Amendment executed after

---

[4] Unless specifically noted, the following facts are undisputed.

[5] Gorss no longer operates as a Wyndham franchisee. *See* ECF No. 134 at 4: "Gorss is a former Wyndham franchisee that operated a Super 8 motel in Connecticut."

Wyndham acquired Super 8 and extending the franchise agreement under the Wyndham umbrella for an additional 5 years (2009 Amendment); and a completely new 2014 Franchise Agreement borne after the 1988 Agreement and the 2009 Amendment expired.

The 1988 Agreement granted Gorss a non-exclusive twenty-year franchise to operate a Super 8 motel in Cromwell, Connecticut. (ECF No. 65-4, Exh. C at 97). As part of its obligations under the 1988 Agreement, Gorss agreed to "furnish motel accommodations, services and conveniences of the same high quality and distinguishing characteristics as provided at Super 8 Motels in and around the United States." (*Id.* at 97). The 1988 Agreement also required Gorss, in a section headed "System Quality," to follow "the specifications and quality of items of personal property to be used in the franchised motel established by [Super 8]." Gorss further agreed "to purchase from [Super 8], or from such other vendor as [Super 8] may approve from time to time, or from any source whose supplies and equipment have been approved in writing by [Super 8], prior to acquisition…" certain listed items. (*Id.* at 102).[6] Gorss acknowledges that Super 8, later Wyndham, had an approved list of vendors that was supplied to Gorss via a catalog. (ECF No. 65-4, Gorss Dep. at 35–36). Gorss further acknowledges that while the vendors' identity was made known to it through the catalog, it was not required to purchase from those vendors if it received prior approval from Super 8/Wyndham to purchase through another vendor. (*Id).*

The 1988 Agreement does not include any express language discussing the sending of advertising materials by approved vendors of Super 8 and neither the 1988 Agreement, nor the 2009 Amendment extending it, contain Gorss' fax number. In fact, the 1988 Franchise Agreement

---

[6] The enumerated items included: mattresses, box springs, bed frames, dresser-desks, chairs for use in guest rooms, nightstands, desk lamps, luggage racks, carpeting, drapes, sheets, blankets, pillows, pillowcases, bedspreads, towels, washcloths, bath mats, facial tissue, toilet tissue, soap, soap wrappers, matches, television receivers, and cabinets. Fitness equipment is not in this list of enumerated items in the 1988 Agreement.

4

does not contain the words "facsimile" or "fax" anywhere in it. The 2009 Amendment, the contract in place at the time that the 2013 Fax was sent by Brigadoon to Gorss, does mention the word "facsimile" or "fax" but in a context irrelevant to the issues presented in this case.[7] These agreements do not contain language, later added to the 2014 Agreement, that Super 8 may "offer optional assistance to [Gorss] with purchasing items used at or in the Facility" or that affiliates of Super 8 may offer this service on their behalf.

The 2014 Agreement, signed over 18 months after Brigadoon sent the 2013 Fax, contained the aforementioned new language and additional requirements regarding Wyndham's marketing and approved supplier programs. Section 4.4 of the 2014 Agreement provides as follows:

> We may offer optional assistance to you with purchasing items used at or in the facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

(ECF No. 130 at ¶ 16).[8] This section does not designate the manner by which affiliates may offer services and does not mention "fax" or "facsimile" or refer to "advertising" or "advertisements."

---

[7] The document merely states that "[a]ll facsimile executions shall be treated as originals for all purposes." (ECF No. 130 at ¶ 9).

[8] In August 2014 (a month before the 2014 Franchise Agreement was signed), Gorss signed a Property Improvement Plan (PIP) with Wyndham which acknowledged as follows:

> By signing this PIP, I acknowledge and agree that select pieces of this PIP may be provided to our approved vendors for the purpose of their offering you products and services that are required to complete this PIP. Only information necessary for the vendor to offer their products and services will be provided, including contact information, property address, number of rooms, brand converting to, and a list of items related to necessary or required products and services.

(ECF No. 130 at ¶ 19). The above language does not contain the words "fax" or "facsimile" nor does it mention specific products or advertisements. However, as with the 2014 Franchise Agreement (discussed *infra)*, this PIP was not in place at the time the 2013 Fax was sent and is not relevant to a resolution of the issues presented here.

(*Id.*). However, Gorss provided its fax number under Section 17 titled "Legal Matters" and Section 17.3 titled "Notices." Specifically, Section 17.3 authorizes five means of delivering written notices: (1) facsimile transmission; (2) delivery service; (3) first class mail; (4) electronic mail; and (5) "by such other means as to result in actual or constructive receipt…" This section then goes on to provide the names, addresses, facsimile numbers and email address for Gorss and Wyndham immediately below.

    **b. Instances of Fax Number Disclosure by Gorss**

Throughout the term of its 1988 Agreement and subsequent 2009 Amendment, Gorss made its fax number public by participating in the Super 8 Motel and Wyndham directories. (ECF No. 65-4, Gorss Dep. at 23-25). These directories, published annually, provided information to consumers regarding the whereabouts of Super 8 Motels and provided contact information. Gorss testified that the directories were published solely "for the public to know where the Super 8's were located." (*Id.* at 25). In fact, Super 8 was required by the 1988 Agreement to "issue from time to time for distribution among travelers and Super 8 Motel customers a directory containing the names, addresses, and other information concerning all Super 8 Motels in good standing." (ECF No. 65-4 at 106).

In the period after the 2009 Amendment, Gorss provided its fax number to Wyndham on a few occasions. In 2010, and again in 2015, it submitted a "Site Contact Form" to Wyndham providing the fax number for the hotel in addition to other information. Neither Site Contact Form mentions promotions, advertising, or marketing. The Site Contact Forms merely requested, and Gorss provided, its phone number, email address, and fax number. (ECF No. 130 at ¶ 14). In addition to the Site Contact Forms, in April 2012, Gorss attended a global trade show hosted by Wyndham and provided its fax number when it registered for the show.

At different times, (the dates are unclear or missing in the record), Wyndham held conventions for franchisees. Gorss registered for the conventions and provided its facsimile number. At the convention, Wyndham vendors set up booths and promotional displays for their products. Gorss interacted with some of these approved suppliers by participating in a lottery where "if we swiped our badge, we would have a chance to win a prize." (Gorss Dep. at 48):

> Q. And by swiping your tag, you would make information about you known and available to the vendors, correct?
> A. It would know – I guess they would know who I was.
> Q. They would have your contact information? Whatever you had registered for attendance at that convention would have been made available to the Wyndham-approved vendors?
> A. Yes.
> Q. You had no problem providing that information to Wyndham-approved vendors, correct?
> A. Correct.

*Id.* at 48–49.

### c. Brigadoon and the Worldwide Sourcing Agreement

In August 2012, Brigadoon acquired Hotel Fitness Club, Inc. ("Hotel Fitness") which was a party to a Worldwide Sourcing Agreement ("WSA") with Worldwide Sourcing Solutions, Inc. ("WSSI"), a wholly owned subsidiary of Wyndham. Together with Wyndham, WSSI provides support to its franchisees by "negotiating prices, volume discounts, and commissions for various products and services with third parties." (ECF No. 65-2, Gattuso Decl. at ¶ 3). Through its acquisition of Hotel Fitness, Brigadoon became a party to the WSA and a Wyndham approved supplier, allowing it to provide "certain products and/or services for the benefit of [Wyndham] and its Affiliates and Participants." (ECF No. 65-2, Gattuso Decl., Exh. A at 1). Through this relationship between Wyndham and Brigadoon, Super 8 franchisees, such as Gorss, were able to achieve discounts on the products and services offered by Brigadoon.

7

As an approved supplier in this Wyndham Marketing Program, Brigadoon periodically received spreadsheets from Wyndham containing contact information, including fax numbers, of Wyndham franchisees. On April 15, 2013, Wyndham supplied a list to Brigadoon that included Gorss' facsimile information, among many others.[9] The following day, Brigadoon utilized a fax broadcaster named WestFax to send the 2013 Fax to Gorss and over 10,000 other recipients. There is no dispute that the 2013 Fax constituted an advertisement and describes the commercial availability of Brigadoon's fitness equipment. There is likewise no dispute that Gorss received the facsimile on its stand-alone fax machine and that the fax contained no opt-out provision. Prior to sending the fax, Brigadoon never communicated with or did business with Gorss. Instead, Brigadoon relied upon its WSA with Wyndham as permission to send the fax and did not contact Gorss prior to sending the fax to request permission to send it.

## DISCUSSION

The TCPA makes it "unlawful for any person within the United States ... (C) to use any telephone facsimile machine ... to send ... an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The statute defines an "unsolicited advertisement" as:

> any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission*, in writing or otherwise.

---

[9] Brigadoon also obtained fax information "from existing or potential customers with whom Brigadoon had previously interacted; franchisees of major hotel chains with which Brigadoon had vendor status; hotels operating under common management or that were members or customers of a large purchasing network known as the National Purchasing Network; and trade show attendees." (ECF No. 96 at 3).

47 U.S.C. § 227(a)(5) (emphasis added).[10] "[P]rior express permission is not an element of a TCPA offense" but rather is an affirmative defense on which defendant bears the burden. *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 950 F.3d 959, 964–65 (7th Cir. 2020).

As noted at the outset, the parties have filed cross-motions for summary judgment. Gorss argues that all the requirements for a claim under the TCPA are satisfied: (1) the 2013 Fax is an advertisement under the TCPA; (2) it was sent to Gorss using a telephone facsimile machine, computer, or other device; and (3) Brigadoon sent the 2013 Fax. Additionally, it asserts that Brigadoon cannot demonstrate the affirmative defense of prior express permission or invitation. Thus, Gorss believes that this Court should enter judgment in its favor and award the minimum statutory damages of $500 for the single violation of the TCPA.[11]

Brigadoon, in turn, concedes the first three TCPA requirements above, but contends the undisputed facts show that Gorss provided prior express permission to receive the fax or, at a minimum, it has set forth genuine issues of material fact as to the affirmative defense precluding Gorss' motion for summary judgment. In a nutshell then, this case boils down to a single question: can Brigadoon establish as a matter of law or raise a genuine issue of fact that Gorss provided prior express permission to receive the 2013 Fax.

The TCPA does not define "prior express permission." Yet, courts have unanimously relied upon guidance from the FCC as to its meaning and concluded that "[e]xpress permission to receive

---

[10] The Act also contains an exception that permits certain unsolicited faxes, such as when, among other requirements, the sender has an "established business recipient and includes an opt-out notice on the fax. *See* 47 U.S.C. § 227(b)(1)(C), (b)(2)(D). It is undisputed that the 2013 Fax contained no opt-out notice and that the parties did not have an established business relationship.

[11] The TCPA also provides for attorney's fees and costs, and treble damages when the violation was knowing or willful. *Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998); *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565-NJR-RJD, 2018 WL 6617106, at *9 (S.D. Ill. July 3, 2018).

a faxed ad requires that the consumer understand that by providing a fax number he or she is agreeing to receive faxed advertisements." *Gorss Motels, Inc. v. Safemark Systems,* 931 F.3d 1094, 1100 (11th Cir. 2019) (quoting *In re Rules & Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 Fed. Reg. 44144, 44168 (FCC July 25, 2003); *Physicians Healthsource, Inc.* 950 F.3d at 965 (applying FCC definition and stating "[w]e are similarly bound to follow the FCC's interpretation of a term where, as here, there is no appeal of the FCC's interpretation."). "The qualifier 'prior' modifying 'express permission' means that the fax recipient must have given his express permission before the fax was sent." *Id.*

Given Gorss' vigorous pursuit of TCPA violations, there exists much precedent from which the Court is guided in resolving the question here. Brigadoon relies heavily on the Eleventh Circuit's decision in *Safemark* and argues that the result in that case supports its assertion that Gorss provided prior express permission. More specifically, Brigadoon claims *Safemark* aligns perfectly with the facts and issues in this case and urges the court to apply the doctrine of collateral estoppel to adopt the outcome and logic of *Safemark* and grant its motion for summary judgment. Not surprisingly, Gorss opposes this result and argues that while *Safemark* may have some issue preclusive effect where the fax at issue was sent after the 2014 Franchise Agreement, it has no application where, as here, the questionable fax was sent well before execution of that agreement.

The doctrine of issue preclusion (or collateral estoppel) bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Bernstein v. Bankert*, 733 F.3d 190, 225 (7th Cir. 2013) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). "For collateral estoppel to apply, '(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the

issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action.'" *Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011) (quoting *H–D Mich., Inc. v. Top Quality Services, Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)). Applying these elements to *Safemark*, the Court concludes that Brigadoon has not demonstrated an identity of issues between the issue litigated and resolved in *Safemark* and the issue in the present case as it relates to the 1988 Agreement and its 2009 Amendment – the very agreements in place at the time the 2013 Fax was sent.

In *Safemark,* Gorss and another Wyndham franchisee claimed that Safemark violated the TCPA by sending two unsolicited fax advertisements, one in 2013 and another in 2015. *Safemark,* 931 F.3d at 1096. There, as here, the parties had entered into the 2014 Franchise Agreement and agreed to the "optional assistance" language as well as the language that "Wyndham affiliates" may offer products to Gorss. Based solely upon the language in the 2014 Franchise Agreement, the Eleventh Circuit concluded that Gorss' "franchise agreements constitute an 'official act of allowing' Safemark the liberty to send them faxes." *Safemark,* 931 F.3d at 1100. The court went on to explain its rationale:

> A reasonable consumer would understand that assistance with purchasing items entails receiving information about buying products, and an advertisement is by definition an "act of informing," which includes "the promotion of goods and services." And the hotels would have to receive this optional assistance with purchasing items–that is, advertisements–by some medium. By providing their fax numbers in their agreements, the hotels invited the assistance or advertisements to come by fax.

*Id.* The court then affirmed the district court's grant of summary judgment based on the finding that Gorss gave prior express permission for the sending of the two faxes. *Id.* at 1100. Curiously and without additional explanation, however, the *Safemark* court found that Gorss had given prior

11

express permission for *both* the 2013 and 2015 fax transmissions seemingly based upon the 2014 Franchise Agreement in its opinion.

At first glance, this is welcome news for Brigadoon. Brigadoon seizes upon the holding and urges the Court to ignore the absence of an explanation for finding prior express permission for the 2013 transmission in *Safemark* and simply apply collateral estoppel to grant its motion for summary judgment. With that end goal in mind, Brigadoon asserts that the issue sought to be precluded is the same in the present case as it was in *Safemark* – whether Gorss by prior invitation or express permission contained in the franchise agreements solicited the 2013 Fax.

As Gorss points out, however, the only agreement examined by the Eleventh Circuit was the 2014 Franchise Agreement. Gorss does not take issue with the logic that once Gorss agreed to the language in the 2014 Franchise Agreement it, in fact, authorized fax transmissions from approved suppliers *from that point forward*. However, neither the 1988 Agreement nor its 2009 Amendment contained the language examined in the 2014 Agreement in *Safemark*.[12] Gorss even provided its fax number in the 2014 Franchise Agreement which bolstered the Eleventh Circuit's conclusion that this evidenced an intention by Gorss to permit fax transmission from Wyndham and its affiliates. *See Safemark,* 931 F.3d at 1100 ("By agreeing that Wyndham affiliates could offer assistance with purchasing items for the hotels *and by providing their fax numbers,* the hotels gave express permission …")(emphasis added).

---

[12] It is unclear whether Brigadoon is arguing that the language in the 1988 Agreement requiring Gorss to purchase enumerated items from Super 8 vendors is similar to the language in the 2014 Agreement and, thus, constituted prior express permission. If so, this argument falls flat. Products and services offered by Brigadoon (i.e., fitness equipment) were not contained in the enumerated list of items in the 1988 Agreement and thus, Gorss was under no obligation to purchase items from Brigadoon. It makes sense then, that even if Brigadoon makes this argument, Gorss did not give prior express permission to vendors of items not on the list by virtue of this language in the 1988 Agreement.

12

This case, however, involves a fax transmission before the 2014 Franchise Agreement took shape and before Gorss provided its fax number in any prior agreement. This Court fails to see how the 2014 Franchise Agreement has any relevance to whether Gorss gave consent in April 2013 to receive fax advertisements. Moreover, it is a reasonable proposition that if, as *Safemark* held, a "reasonable consumer" would read the language in the 2014 Franchise Agreement as providing express permission, the absence of such language from a prior agreement would seemingly lead to the opposite conclusion – permission was withheld. Thus, this Court is hard-pressed to conclude that an agreement signed nearly a year and a half after the 2013 fax transmission in this case can give rise to the necessary *prior* express permission required by the TCPA.

The Court finds further justification in this conclusion in the holdings of every other court examining this issue. *See Gorss Motels, Inc. v. Eric Ryan Corp.,* 461 F. Supp. 3d 5 (D. Conn. 2020); *Gorss Motels, Inc. v. Am. Hotel Register Co.*, No. 17 C 1011, 2020 WL 4430563, at *6 (N.D. Ill. July 31, 2020); *Gorss Motels, Inc. v. AT&T Mobility, LLC,* No. 3:17-CV-403 (JBA), 2020 WL 5645787, at *7 (D. Conn. Sept. 22, 2020); *see also Gorss Motels v. Sprint Commc'ns Co., L.P.*, ___ F.Supp.3d ___, 2020 WL 818970 at *4 (D.Conn. Feb. 19, 2020) ("Sprint I") (holding that *Safemark* relies on a "mistaken and strained interpretation of the 2014 Franchise Agreement" and its holding runs contrary to the words of the TCPA). Each of these cases addressed precisely the issue raised by Brigadoon here and further convinces the Court that *Safemark* cannot be construed as broadly as Brigadoon reads it.

For instance, in *Gorss Motels, Inc. v. Am. Hotel Register Co.,* 2020 WL 4430563, at *6, this Court's colleague in the Northern District of Illinois rejected the defendant's assertion that

13

*Safemark* applied to a 2013 fax sent prior to the execution of the 2014 Franchise Agreement, explaining:

> The 1988 Franchise Agreement, unlike the 2014 Franchise Agreement on which the Eleventh Circuit relied, did not state that the franchisee would provide "optional assistance" with "purchasing items" from approved suppliers. Although the 1988 Franchise Agreement required plaintiff to purchase certain items, including headboards, either from the franchisor or from approved suppliers, plaintiff did not provide its facsimile number with the 1988 Franchise Agreement.

*Id.* The Court did, however, seemingly give preclusive effect to *Safemark's* analysis of the 2014 Agreement by concluding that Gorss did give prior express permission for a 2015 fax sent by the defendant since that fax occurred after the 2014 Agreement took effect.

In *Gorss Motels, Inc. v. Eric Ryan Corp.,* 461 F. Supp. 3d at 15, the Connecticut district court granted summary judgment to Gorss finding that "[b]ecause the decision in *Safemark* regarding Gorss was based on the 2014 Franchise Agreement, and that Agreement was not in effect at the time the Faxes at issue in this case were sent in 2013, the Court does not agree with Eric Ryan that the facts in *Safemark* are 'nearly identical' to the facts in this case." *Id.* The court noted that "*Safemark* does not address the fact that one of the two faxes at issue in that case was sent before Gorss entered the 2014 Franchise Agreement," *id.* at n.8, and went on to find that Gorss did not provide prior express permission for any of the three faxes sent in the case. *Id.* at 18-19.

Finally, in *Gorss Motels, Inc. v. AT&T Mobility, LLC*, the latest case to address the issue, the Court indicated that *Safemark* failed to provide useful guidance, "because the 2014 Franchise Agreement is inapplicable to the parties' dispute." *AT&T Mobility, LLC,* 2020 WL 5645787 at *14. The court also expressly declined to adopt the defendant's view that principles of collateral estoppel required the court to follow the holding in *Safemark*:

> As Defendants state, for collateral estoppel to apply, "the issues in both proceedings must be identical." Here, the issues are not identical because as the Defendants agreed at oral argument, the 2014 Franchise Agreement is not a binding contract with respect to the Fax and that is not direct evidence of permission. Since

14

> Defendants conceded at oral argument that the 2014 Franchise Agreement does not directly apply to the fax at issue, the facts are not identical and therefore *Safemark* does not collaterally estop Plaintiff's claim.

*Id.* at *14-15.[13]

In each of the above cases, the various courts declined to accept the very proposition Brigadoon argues here, that is that the issue in *Safemark* that was actually litigated in the Eleventh Circuit involved the impact of the 2014 Franchise Agreement on the fax sent before that agreement became effective. This Court concludes in similar fashion and rejects the notion that collateral estoppel controls the outcome here, where the basis for the *Safemark* decision is an agreement with no applicability to the present disputed issue.

With respect to Brigadoon's final argument, that Gorss' disclosure of its fax number on Site Contact Forms in 2010 and 2015, in a general hotel directory, or while registering for a trade show/convention permits a finding as a matter of law (or creates a genuine issue of fact) that Gorss provided prior express permission in 2013 to receive facsimile advertisements, this Court concludes otherwise. In assessing this question, the Court must disregard any disclosures of fax information by Gorss occurring after the 2013 Fax as the disclosure of Gorss' fax number after that date cannot, by definition, be said to have given express permission prior to it. *See Eric Ryan,* 461 F.Supp.3d at 17 ("The Court will disregard the 2015 Form, since a communication made in

---

[13] In *Gorss Motels v. Sprint Commc'ns Co., L.P.*, No. 3:17-CV-546 (JAM), 2020 WL 1303175 (March 19, 2020)("Sprint II"), the district judge, on reconsideration, denied Sprint's request that that the court apply collateral estoppel to find *Safemark* dispositive, writing:

> Even if I were to assume that any other court's interpretation of the 2014 Franchise Agreement should be given collateral estoppel effect, Sprint offers no coherent reason how such an interpretation could apply to the seven of the nine faxes at issue in this case that were transmitted *prior* to the 2014 Franchise Agreement. Sprint's reliance on the 1988 Franchise Agreement is nonsensical because that agreement does not have the same language from Paragraph 4.4 of the 2014 Franchise Agreement that was relied on as the grounds for decision by the *Safemark* and *Otis Elevator* courts.

*Id.* at *2.

15

2015 could not constitute prior express permission for a fax sent in 2013."). Brigadoon has thus properly put before the Court three items to consider in determining whether Gorss gave prior express permission for Brigadoon to send the 2013 Fax: (1) Gorss' disclosure of its fax number in the annual directory; (2) Gorss' disclosure of its fax number in the 2010 Site Contact Form; and (3) Gorss' attendance and registration at a 2012 trade show.[14]

Brigadoon reasons that considering all of the above in tandem, Gorss' provision of its fax number to the public and in its registration for the trade show constitutes prior express permission as a matter of law. To this end, it relies on the Seventh Circuit's holding in *CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 725–28 (7th Cir, 2001) wherein the Seventh Circuit "suggest[ed] that a firm that affirmatively publishes its fax number in a trade publication has granted prior express permission to members of that trade association." *Physicians Healthsource, 950* F.3d at 965. But, "the fact that [a] facsimile number was made available in a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to the that number." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 21 F.C.C.Rcd. 3787, 3796 (F.C.C. 2006).

In *Am. Hotel Reg. Co.,* 2020 WL 443053 at *2, the district court considered evidence similar to that set out by Brigadoon in this case to demonstrate prior permission. There, as here,

---

[14] Brigadoon submits Gorss' owner's deposition testimony that he registered for and attended conventions at unspecified times. Brigadoon further asserted that Gorss swiped his name badge at various vendors booths. What Brigadoon has not set forth is the date when these events happened, the information that was provided to the vendors when Gorss swiped his badge, and/or whether the fax number that Gorss provided at registration was made generally available to the vendors. The Court does not have the registration forms or any evidence whatsoever to confirm that Gorss' attendance at conventions occurred prior to the sending of the 2013 Fax. At most, the Court has an answer to a deposition question wherein Gorss was asked if he attended a convention in the fall of 2013 in Las Vegas. Gorss did not recall and, even if he did, the 2013 Fax was sent in the spring of 2013 so this convention is irrelevant to whether Gorss gave *prior* express permission. *See also, Sprint I*, 2020 WL 818970 at *3 ("It is likewise irrelevant that Gorss'[] owner went to trade show conferences where he swiped his badge at Sprint promotional booths, because this again does not show that he invited or gave permission to Sprint to send fax advertisements.").

16

Gorss had supplied its fax number on a 2010 site contact form and further supplied the number when it registered for and attended a trade show in April 2012. The court declined to find express permission as a matter of law, writing:

> Defendant has a stronger argument as to permission after plaintiff signed the 2009 Amendment and, soon thereafter, supplied Wyndham with its facsimile number multiple times. Still, as plaintiff points out, "permission to generally send faxes does not establish prior express permission to fax ads." *Physicians Healthsource*, 950 F.3d at 966. And, even were the Court to accept plaintiff's argument that it is enough that the facsimile relates to the reason plaintiff supplied the facsimile number (a proposition *Physicians Healthsource* may foreclose), defendant has put forth no evidence that the reason plaintiff supplied its facsimile number multiple times was so that the franchisor or approved vendors could contact it about the products the 1988 Franchise Agreement required plaintiff to purchase from either the franchisor or an approved vendor.

*Am. Hotel Reg. Co.,* 2020 WL 4430563 at *6.[15] Similar outcomes have resulted in *Eric Ryan*, as the court there concluded that "[n]o reasonable juror could find that by providing a fax number in a contact list, Gorss understood that it was agreeing to receive the Faxes sent by Eric Ryan." 461 F. Supp. 3d at 17. And again, in *Sprint I* "[b]ut the fact that Gorss freely gave out its fax number is not enough, without more, to conclude that Gorss expressly invited or gave permission to anyone to bombard it with fax advertisements." ___ F.Supp.3d ___, 2020 WL 818970 at *2 (citing *In re Rules & Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 Fed. Reg. 44144, 44168 (FCC July 25, 2003).

Indeed, in *Sprint I* the Court surmised that had Sprint pointed to some document in which "Gorss itself agreed to receive fax advertisements or was put on notice that by furnishing its fax number it was agreeing to receive fax advertisements, then Sprint could establish that Gorss gave the express permission that the [TCPA] requires." By not doing so, the court found that Sprint

---

[15] Gorss did not file a cross-motion for summary judgment in this case and thus, it appears the case remains pending as to whether a TCPA violation occurred with respect to the 2013 fax at issue in that case. The court granted the defendant's motion for summary judgment on the affirmative defense of prior permission with respect to the 2015 facsimile.

17

could not establish as a matter of law its affirmative defense and denied Sprint's motion for summary judgment. *See Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.,* 2009 WL 602019 at *2 (W.D.Wis. 2009)(advertising fax was solicited where plaintiff provided fax number and signed seminar enrollment form that stated "providing your fax number constitutes an express invitation to send you fax advertisements about future Lorman seminars").

*AT & T Mobility* appears to be the only case where a court, addressing evidence similar to that provided by Brigadoon, concluded that this evidence was sufficient to raise an issue of material fact as to the prior permission defense and denied the parties' cross-motions for summary judgment on that issue. In that case, the defendants relied upon the site contact form and "witness testimony" from a Wyndham employee that Gorss agreed to receive fax advertisements by providing its number to its franchisor. *AT&T Mobility, LLC,* 2020 WL 5645787 at *15. Additionally, the defendant pointed to evidence of Gorss' long-standing franchisor/franchisee relationship and the requirement in the 1988 Agreement that Gorss purchase certain items directly from Wyndham suppliers. In denying the defendant's motion for summary judgment, the court determined that "Wyndham's subjective belief that franchisees generally want to receive promotional faxes is insufficient to meet [d]efendant's burden of demonstrating that Gorss Motels specifically understood that, by providing its fax number, it was agreeing to receive faxed advertisements." *Id.* at 15. Turning next to Gorss' motion for summary judgment, the court concluded:

> While the Site Contact form alone is not sufficient to establish that Plaintiff expressly gave permission to receive advertisements like the Fax, Defendants point to other evidence in the record, coupled with the Site Contact Form, could allow a reasonable finder of fact to conclude that Defendants had Plaintiff's permission to send advertisements like the Fax. Specifically, Defendants identify evidence of Plaintiff's "long standing franchisor/franchisee relationship" with Wyndham, including the requirement that Plaintiff purchase certain items directly from suppliers approved by Wyndham, and the provision of information to franchisees about the identities of approved suppliers. While this evidence is insufficient to entitle Defendants to summary judgment, when drawing inferences in favor of

18

> Defendants for the purpose of assessing Plaintiff's motion for summary judgment, the evidence does create a genuine question of fact regarding whether Plaintiff gave permission to receive faxes from Wyndham and from approved suppliers, like Defendants.

*AT&T Mobility, LLC,* 2020 WL 5645787 at *16–17.

Brigadoon does not cite to *AT&T Mobility* (it was decided three months after the briefing in this case concluded) but attempts, unsuccessfully, to distinguish the present case from the holding in *Eric Ryan*. Brigadoon further argues that "the Court must consider Gorss' actions as a whole." (ECF No. 146 at 2).[16] It then goes on to assert that "on numerous occasions, Gorss made its fax number publicly available and participated in the Super 8 and Wyndham directories that were published online." (*Id.* at 3). Thus, in its view, taken as a whole, "Gorss' actions in making its fax number publicly available constitutes express invitation or permission to receive the fax at issue." *Id.* at 4.

Summary judgment is often referred to as the "put up or shut up" stage of litigation. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Here, Brigadoon has not provided any evidence or alternate facts that serve to distinguish the evidence here from the cases cited above or, as in the case of *AT & T Mobility,* suggests that the longstanding franchisee/franchisor relationship coupled with other evidence impacts the outcome. The Court is left with the same type of facts that these other cases have found insufficient for a determination of prior express permission as a matter of law. Moreover, the record here leaves nothing open for the jury to decide. There is no dispute that Gorss, in fact, published its fax number in the directory, added its fax number to the 2010 site contact form, or that it included its fax number on a trade show registration form and subsequently attended that convention. The only dispute is the legal import of those facts and, in solidarity with

---

[16] Brigadoon makes an undeveloped and confusing argument that Gorss automatically became a participant in Wyndham's Approved Supplier program once Wyndham acquired Super 8 presumably because the WSA defined Gorss as a participant. However, Gorss is not a signatory to the WSA.

the other courts that have reached the same conclusion, this court concludes that no reasonable juror could conclude that these facts constituted an express invitation for Brigadoon to send the 2013 Fax. Gorss would not have understood by virtue of its fax disclosure in the directory, in the site contact form or in the trade show registration that by providing its fax number it was agreeing to receive faxed advertisements. Accordingly, the Court DENIES Brigadoon's Motion for Summary Judgment asserting the defenses of prior express permission and collateral estoppel.

Finally, with respect to Gorss' Motion for Summary Judgment, no genuine dispute of fact exists as to the violation of the TCPA as Brigadoon conceded the elements of the TCPA claim in its briefing. As noted above, Defendant cannot as a matter of law establish its affirmative defense of prior express permission and no genuine disputes of fact exist. For these reasons, Gorss' Motion for Summary Judgment is GRANTED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion for Summary Judgment (ECF No. 133) is DENIED. Plaintiff's Motion for Summary Judgment (ECF No. 129) is GRANTED. JOHN DOES 1-5 are DISMISSED. The CLERK is DIRECTED to enter judgment in favor of Gorss Motels and against the Defendant in the amount of $500.00, which constitutes the statutory damages to which it is entitled under the TCPA.

SO ORDERED on January 26, 2021.

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT