# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

April 15, 2022

To:   Gary T. Bell
      UNITED STATES DISTRICT COURT
      Northern District of Indiana
      Fort Wayne, IN 46802-0000

|  |  |
|---|---|
| No. 21-1358 | GORSS MOTELS, INC.,<br>              Plaintiff - Appellant<br><br>v.<br><br>BRIGADOON FITNESS INC. and BRIGADOON FINANCIAL, INC.,<br>              Defendants - Appellees |

| **Originating Case Information:** |
|---|
| District Court No: 1:16-cv-00330-HAB |
| Northern District of Indiana, Fort Wayne Division |
| District Judge Holly A. Brady |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                    No record to be returned

form name: **c7_Mandate**    (form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

March 24, 2022

Before

FRANK H. EASTERBROOK, *Circuit Judge*
ILANA DIAMOND ROVNER, *Circuit Judge*
THOMAS L. KIRSCH II, *Circuit Judge*

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk of the United States
Court of Appeals for the
Seventh Circuit

| | |
|---|---|
| No. 21-1358 | GORSS MOTELS, INC.,<br>　　　　Plaintiff - Appellant<br><br>v.<br><br>BRIGADOON FITNESS INC. and BRIGADOON FINANCIAL, INC.,<br>　　　　Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 1:16-cv-00330-HAB<br>Northern District of Indiana, Fort Wayne Division<br>District Judge Holly A. Brady | |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**　　(form ID: **132**)

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1358

GORSS MOTELS, INC.,

*Plaintiff-Appellant,*

*v.*

BRIGADOON FITNESS, INC. and
BRIGADOON FINANCIAL, INC.,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:16-cv-00330 — **Holly A. Brady**, *Judge.*

---

ARGUED SEPTEMBER 24, 2021 — DECIDED MARCH 24, 2022

---

Before EASTERBROOK, ROVNER, and KIRSCH, *Circuit Judges*.

ROVNER, *Circuit Judge*. Gorss Motels, Inc. brought an action under the Telephone Consumer Protection Act ("Act") seeking statutory penalties for itself and on behalf of a class of recipients of purportedly unsolicited facsimile advertisements sent by the defendants. The district court declined to certify the

original class or a modified version, finding in each instance that common issues did not predominate. Gorss then proceeded to summary judgment on its own claim and prevailed. On appeal, Gorss challenges the district court's denial of class certification. We affirm.

## I.

At the relevant time, Gorss Motels, Inc. ("Gorss") operated a Super 8 Motel as a franchisee of Wyndham Hotel Group, LLC ("Wyndham"), under a franchise agreement signed in October 1988.[1] Gorss agreed in that contract to furnish the facility in accordance with Wyndham's standards, and to purchase from Wyndham or its approved vendors an extensive list of supplies and equipment ranging from soap and toilet tissue to carpeting and mattresses. Brigadoon Fitness, Inc. ("Brigadoon")[2] sells fitness equipment to hotels and others. Brigadoon is an approved vendor for Wyndham franchisees and was subject to a "Sourcing Agreement" with Worldwide Sourcing Solutions, Inc. ("Worldwide"), a wholly-owned subsidiary of Wyndham Worldwide Corp. and an affiliate of Wyndham. Under the Sourcing Agreement, Brigadoon is allowed to sell fitness

---

[1] Gorss signed its original twenty-year franchise agreement with Super 8 in 1988. Super 8 was later acquired by Wyndham, and Gorss executed an Amendment to the franchise agreement in 2009, extending the franchise relationship five more years. In 2014, Gorss signed an entirely new franchise agreement with Wyndham. The 1988 agreement, as amended in 2009, governed at the time of the relevant events.

[2] The parties treat Brigadoon Fitness, Inc. and Brigadoon Financial, Inc. as the same in this appeal. We will refer to the defendants jointly as "Brigadoon."

No. 21-1358                                                    3

equipment to Wyndham franchisees through marketing
programs. As part of this arrangement, Wyndham periodically
provided contact information for its franchisees, including fax
numbers, to Brigadoon. Brigadoon had similar "approved
vendor" relationships with others in the hospitality industry
including Interstate Hotels Group, Best Western, Choice
Hotels, and LaQuinta, each of which in turn had contractual
relationships with their franchisees. As was the case with
Wyndham, each of these hotel chains and their franchisees also
periodically provided Brigadoon with contact information,
including fax numbers that had been collected at various times
and under differing circumstances.

Gorss provided contact information, including fax num-
bers, to Wyndham and others for business purposes and for
directories that were available to the hospitality industry and
to the public. Steven Gorss also attended conventions and
trade shows on behalf of Gorss, including in 2012, and person-
ally provided contact information to Wyndham-approved
suppliers at these events, sometimes by swiping an identifica-
tion badge at a convention booth. Gorss received a fax from
Brigadoon on April 17, 2013, advertising its fitness equipment
and offering a special deal on certain purchases. The fax was
part of a large transmission to more than 10,000 recipients.
Brigadoon formulated the list of recipients from a variety of
sources. It obtained some fax numbers from Wyndham as part
of the Sourcing Agreement. Other sources for contacts in-
cluded: Brigadoon's own databases of existing or potential
customers with whom Brigadoon had previously interacted;
other franchisees of major hotel chains with whom Brigadoon
had vendor status; hotels that were members of or operating

4                                    No. 21-1358

under a large purchasing network known as the National Purchasing Network, which authorized Brigadoon to market to its members; and trade show attendees.

The Act prohibits the use of "any telephone facsimile machine … to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(c). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Although the Act contains a safe harbor for senders who have an existing business relationship with fax recipients, the April 17, 2013 fax did not comply with the statutory requirements for that protection. *See* 47 U.S.C. § 227(b)(1)(c) and (b)(2)(D) (describing the requirements for "opt out" notices that would have informed recipients how to stop receiving future fax advertisements).

When Gorss filed suit under the Act, it sought to certify a class under Rule 23(b)(3) of all recipients of the April 17, 2013 fax advertisement. Noting that plaintiffs bear the burden of proving entitlement to class certification under Rule 23, the district court focused on the Rule 23(b)(3) requirement of "predominance," which calls for the court to find, among other things, "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Because the issue of whether the faxes were solicited is key to recovery under the Act, and because Brigadoon assembled the list of recipients from a number of different relationships and circumstances that could well indicate that the recipients did in fact solicit the fax advertise-

No. 21-1358                                                      5

ments, the court ultimately concluded that Gorss failed to meet
its burden of demonstrating that common issues of fact
predominated. Instead, the court found, the case presented the
"specter of unlimited mini-trials" to determine the precise
relationship between sender and recipients so that the court
could determine whether prior express permission to send the
faxes had been granted in each instance. For example, some
recipients arguably provided permission in person at trade
shows; others may have consented through one of many
different versions of franchise agreements; still others may
have solicited fax advertisements through their membership
and participation in the National Purchasing Network; and
some arguably provided consent through more than one of
these means. The court therefore declined to certify a class of
all recipients of the April 17, 2013 fax. Gorss then moved for
reconsideration of the order denying class certification or
alternatively for certification of a class of recipients whose fax
numbers were obtained from a list of Wyndham franchisees
only, and whose numbers had been supplied to Brigadoon due
to its status as a Wyndham-approved supplier. Focusing again
on the question of predominance, the court noted that the more
than 3,000 fax numbers in this subset included those of:
Wyndham franchisees with which Brigadoon had pre-existing
relationships; entities that appeared on Brigadoon's internal
Goldmine contacts database; businesses that were current and
former customers of Brigadoon whose contact information was
stored in Brigadoon's Sage 500 accounting system; and
individual hotel/motel representatives who had attended an
industry trade convention and shared contact information with
Brigadoon at that time. Wyndham, the court noted, employed

6                                    No. 21-1358

many different franchise agreements with various hotel/motel brands. As with the original proposed class, the court concluded that sorting out which of these recipients had engaged in conduct that met the definition of "soliciting" fax advertisements would require assessment on a case-by-case basis, and declined to certify the modified class. Gorss appeals both decisions.

## II.

We review class certification orders for abuse of discretion. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). The party seeking class certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."); *Bell*, 800 F.3d at 373. Gorss asserts that the district court abused its discretion by applying erroneous legal rules to the predominance inquiry. In particular, Gorss first argues that the court improperly denied class certification without requiring Brigadoon to identify any member of the proposed class that provided express prior permission; instead, Gorss contends, the court should have required Brigadoon to show with specific evidence that a significant percentage of the class is subject to this defense. Second, Gorss maintains that the court applied an erroneous "implied consent" standard for "prior express invitation or permission" to receive fax advertisements under the Act rather than employing the standard announced in *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 950

F.3d 959 (7th Cir. 2020), which was decided after the district court declined to certify a class. Finally, Gorss complains that the district court erred in denying certification of the smaller proposed "Wyndham-only" class by treating permission to receive fax advertisements as transferrable.

## A.

Although plaintiffs seeking to certify a class bear the burden of demonstrating compliance with Rule 23, "prior express invitation or permission" is an affirmative defense for which defendants bear the burden of proof at trial. *Physicians Healthsource*, 950 F.3d at 964–65. Because Brigadoon carries this burden at trial, Gorss faults the district court for denying class certification without requiring Brigadoon to prove that any class member met the standard for prior express permission set forth in *Physicians Healthsource*.[3] According to Gorss, the court should have required Brigadoon to show with specific evidence that a "significant percentage" of the class was subject to this defense, citing the district court decision in *Physicians Healthsource, Inc. v. A-S Medication Solutions, LLC*, 318 F.R.D. 712, 725 (N.D. Ill. 2016).

The district court did not err, however, on either the facts or the law. The predominance inquiry, which "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, … calls upon courts to give careful

---

[3] At the time the district court issued its orders denying class certification, this court had not yet decided *Physicians Healthsource*. As we discuss below, although the district court did not have the benefit of *Physicians Healthsource* at the time it rendered its decisions, the court did not apply any erroneous legal standards in deciding the predominance question.

scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). An individual question is one where members of a proposed class will need to present evidence that varies from member to member; a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof. *Tyson Foods*, 577 U.S. at 453. The district court here correctly noted that the question of whether the fax advertisement was sent without prior express permission was the key issue to be resolved in order for the proposed class to recover under the Act. The question for class certification purposes is whether resolving this key issue is susceptible to generalized, class-wide proof.

There are certainly instances in which the issue of prior express permission might be amenable to class-wide proof. For example, in some cases brought under the Act, prior express permission may be given by some uniform means such as identical product registration forms or standardized end-user licensing agreements. *See e.g. True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018). In circumstances where there is little or no variation in the form employed for obtaining permission, the predominance requirement of Rule 23(b)(3) may be satisfied because prior express permission, or lack thereof, is ascertainable by examining the uniform product registrations and licensing agreements. *Id*. Similarly, in some cases brought under the Act, where the fax sender purchased a contact list from a third-party vendor and made no attempt to seek permission from any of the recipients before sending the fax advertisement, there is a generalized,

No. 21-1358                                                      9

class-wide manner of proving lack of consent. *Bridging Communities, Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (where the plaintiff presented evidence that the fax sender failed to verify consent with anyone on a list of fax numbers purchased from a third party, suggesting a class-wide absence of consent, the sender's mere allegation that class members might have given consent in some other way was insufficient to defeat class certification); *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327–28 (5th Cir. 2008) (noting that lack of consent to receive a fax advertisement may be decided on a class-wide basis when the sender obtained all of the fax recipients' numbers from a single purveyor of such information, especially in light of a federal regulation which requires that senders who obtain fax numbers from a commercial database must take reasonable steps to verify that the recipients agreed to make the number available for distribution).

In other instances, however, prior express permission is an issue that must be decided on an individualized basis. For example, in *Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 291(7th Cir. 2018), the plaintiff had a market agreement with the fax sender in which he agreed that the sender could communicate with him by fax, raising the possibility that the plaintiff consented to receipt of the disputed fax. We noted that the "question of what suffices for consent is central, and it is likely to vary from recipient to recipient (or so the district court reasonably could have concluded)," especially because it was unclear what agreements the sender might have had with the other recipients that the plaintiff sought to represent. *Id*. These transaction-specific inquiries were the "hallmarks" of an issue that required individual scrutiny. We therefore held that the

district court did not abuse its discretion when it concluded that the Rule 23(b)(3) criteria were not met. *Id.*

The district court similarly did not abuse its discretion here. The fax numbers that Brigadoon used for this broadcast were obtained in multiple ways. The numbers were collected through franchise agreements that were not uniform among fax recipients; the National Purchasing Network; oral permission or badge swiping at trade conventions; lists of past or present customers of Brigadoon; or some combination of these and other sources. Even the smaller "Wyndham-only" list was collected from a variety of sources including more than ten different franchise agreements; franchisees that had prior existing relationships with Brigadoon; Brigadoon's internal Goldmine contacts database; prior and existing Brigadoon customers whose contact information was stored in the company's Sage 500 accounting system; and individual hotel/motel representatives who shared contact information with Brigadoon at trade conventions. As the district court noted, Brigadoon made more than vague assertions about prior permission; it provided specific evidence about the various relationships, contracts, and personal contacts that it had with the fax recipients, necessitating individualized analysis of prior express permission.

Although Gorss contends that Brigadoon failed to prove that any single recipient consented, it is not the final merits of the permission inquiry that matter for Rule 23(b)(3) purposes; it is the method of determining the answer and not the answer itself that drives the predominance consideration:

> The Rule 23(b)(3) predominance requirement inher-
> ently requires the court to engage with the merits of
> the case, yet without deciding the merits. To decide
> predominance, the court must understand what the
> plaintiffs will need to prove and must evaluate the
> extent to which they can prove their case with
> common evidence. "In other words, a court weigh-
> ing class certification must walk a balance between
> *evaluating* evidence to determine whether a common
> question exists and predominates, *without weighing*
> that evidence to determine whether the plaintiff
> class will ultimately prevail on the merits." *Bell v.
> PNC Bank, N.A.*, 800 F.3d 360, 377 (7th Cir. 2015)
> (emphases added). We recognize the contradiction
> built into the standard. The judge must examine the
> evidence for its cohesiveness while studiously
> ignoring its bearing on merits questions[.]

*In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020).
This analysis applies not only to the elements that plaintiffs
must prove but also to affirmative defenses like prior express
permission. *See Gene & Gene*, 541 F.3d at 327 (predominance of
individual issues necessary to decide an affirmative defense
may preclude class certification). As the district court noted
here, although Brigadoon's evidence for the fax recipients may
not hold up as constituting prior permission, "there is no
generalized proof that can be used to resolve the issue of prior
permission on a class-wide basis across the various methods
that Brigadoon used to obtain fax numbers." *Gorss Motels, Inc.
v. Brigadoon Fitness, Inc.*, 331 F.R.D. 355, 360 (N.D. Ind. 2019).
"At class certification, the issue is not whether plaintiffs [or

defendants] will be able to prove these elements on the merits, but only whether their proof will be common for all plaintiffs [or defendants], win or lose." *Allstate*, 966 F.3d at 604. The district court did not abuse its discretion in denying certification on the ground that Gorss failed to carry its burden of demonstrating predominance.

### B.

Nor did the district court rely on an incorrect understanding of the legal standard for "prior express permission" when it analyzed the predominance issue. As we noted, a party that sends a transmission by fax is liable under the Act only for *unsolicited advertisements*. 47 U.S.C. 227(b)(1)(C)(iii). Whether an advertisement is unsolicited turns on whether the ad was transmitted without the recipient's prior express invitation or permission, in writing or otherwise. 47 U.S.C. § 227(a)(5).

Although the district court did not explore the limits of the permission inquiry in its initial ruling denying certification, it did probe the standard in more depth on reconsideration, finding that express permission requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements. *Gorss Motel, Inc. v. Brigadoon Fitness, Inc.*, 2019 WL 5692168, *3 (N.D. Ill. Nov. 4, 2019) (citing *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011)). *CE Design*, in turn, relied on the definition of express permission given by the Federal Communications Commission. 637 F.3d at 726 (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14129, 2003 WL 21517853) (hereafter "FCC 2003 Order")). The district court also correctly noted that

No. 21-1358                                                    13

the statute did not require a specific form of invitation or permission. The court assessed the proposed revised class definition and again concluded that questions of prior express invitation or permission were individual inquiries that predominate over common issues. The court emphasized that Gorss had the burden of establishing that class certification was appropriate, requiring Gorss to:

> proffer a viable method of determining a recipient's consent that does not require individualized, fact-based mini-trials for each potential class member. Answering the bona fide issue of whether a particular fax was solicited—as Plaintiff argues Brigadoon must do at this stage—would require an individualized inquiry. This is telling because the method of determining the answer, not the answer itself, is the driving consideration under Rule 23(b). *See Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 819 (7th Cir. 2012) (noting that Rule 23(b)(3) requires common evidence and methodology, but not common results).

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 2019 WL 5692168, *5 (N.D. Ill. Nov. 4, 2019). There was nothing erroneous in that conclusion.

Gorss argues nevertheless that we narrowed the standard for "express prior permission" in *Physicians Healthsource*, and that the district court erroneously applied a less rigorous "implied consent" standard in denying class certification. Gorss first cites a number of district court decisions (including the district court decision in *Physicians Healthsource)* for the

14                                          No. 21-1358

proposition that the district court here should have required Brigadoon to set forth specific evidence that a "significant percentage" of the putative class consented before finding that individual issues predominate. Gorss then argues that even though it has the burden of demonstrating that it meets the Rule 23 requirements, the defendant's burden of proof on permission strongly affects the analysis on Rule 23(b)(3) predominance, allowing courts to consider only those permission claims that a defendant has actually advanced and for which it has presented evidence.

But Brigadoon did advance a plausible permission defense and it did present evidence in support of that defense to the district court. At the class certification stage, the court was not required to determine the merits of that defense but only to consider whether determining the merits would require individual inquiries rather than class-wide proof. Obviously, if Brigadoon's claim of permission were based on a legally flawed definition, the company's argument regarding predominance would fail. But the district court did not rely on a flawed definition of prior express permission; it applied a definition that was consistent with the standard we later announced in *Physicians Healthsource*: that express permission requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements. The refinements that we made to that standard in *Physicians Healthsource* do not affect the predominance analysis in this case because, under either definition, Gorss has offered no generalized class-wide manner to resolve the permission question.

No. 21-1358                                                        15

In *Physicians Healthsource*, we sought to give a clear standard for prior express invitation or permission that was consistent with the FCC's guidance, including the FCC 2003 Order as cited in *CE Design*, as well as a 2006 Order from the FCC. 950 F.3d at 965. We began by noting that we are bound by the FCC's interpretation when it has not been appealed, as is the case here:

> In its 2003 Order, the FCC explained that "[e]xpress permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive fax advertisements." 18 FCC Rcd. at 14129. Per the FCC, such permission may be written or oral. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3811 (2006). That said, the FCC has explicitly found that "negative options," in which a sender presumes consent unless advised otherwise, are insufficient to prove express permission. *Id*. at 3811 n.168 (explaining that "[a] facsimile advertisement containing a telephone number and an instruction to call if the recipient no longer wishes to receive such faxes, would constitute a 'negative option' "); see also 18 FCC Rcd. at 14130 (" 'negative option[s]' [are] contrary to the statutory requirement for prior express permission or invitation").

950 F.3d at 965.

Consistent with this interpretation, we concluded that evidence of permission to generally send faxes does not

No. 21-1358

establish prior express permission to fax *advertisements*. 950
F.3d at 966. We also rejected any claim that *post hoc* statements
that an individual *would have* given consent sufficed because
they do not demonstrate that the fax sender had *prior* express
permission to send the faxes. Instead, in order to demonstrate
that the recipient has given permission on an ongoing basis to
fax advertisements:

> the consumer must affirmatively and explicitly give
> the advertiser permission to send it fax advertise-
> ments on an ongoing basis. The invitation or permis-
> sion cannot simply authorize a single, specific fax, or
> state that the consumer consented to receive faxed
> ads from the defendant in the past. Instead, it must
> explicitly convey that the consumer gives the adver-
> tiser ongoing permission to send ads via fax until
> such time as the consumer withdraws its consent.

*Physicians Healthsource*, 950 F.3d at 966.

Applying this rule in *Physicians Healthsource*, we considered
the three categories of evidence that the fax sender claimed in
support of its defense of prior express permission. First, we
found that the defendant could not meet its burden on prior
express permission by showing that the recipient agreed to
receive "product information" by fax after a purchase of goods
or services, unless the language also suggested that the consent
included promotional materials or information regarding
products not yet purchased, *i.e.*, advertising. 950 F.3d at 967.
Moreover, evidence that one consented to a fax advertisement
in the past and would have consented to receive faxed ads
again if asked would not be sufficient to meet the standard. *Id.*

No. 21-1358                                                    17

Nor would general permission to receive faxes suffice. 950 F.3d at 965–66. Because those three categories of evidence covered the universe of the asserted defense, the court in *Physicians Healthsource* was able to decide the issue of prior express permission on a class-wide basis. Moreover, to the extent that such permission had been given, it was undisputed that it had been given to the defendant's predecessor-in-interest, not the defendant, and we concluded that the permission was not transferrable to a third party. 950 F.3d at 967.

     None of this is contrary to the district court's analysis in the present case. In this instance, Brigadoon demonstrated that it had a large variety of contracts, relationships, and personal contacts with the recipients of the faxes. Hotels and motels like Gorss signed franchise contracts in which they agreed to use approved vendors like Brigadoon to stock and furnish their motels and hotels. Some of the franchisors, including Wyndham, also required franchisees to use approved vendors to remedy deficiencies identified during inspections, and those franchisees agreed in Property Improvement Plans that their contact information (which in some cases included fax numbers) would be provided to vendors so that the vendors could offer their products and services, in other words so that the vendors could advertise their products and services to the franchisee. Some of the recipients operated under the National Purchasing Network, a members-only buying network for hotels and motels, for which Brigadoon was an approved vendor. And some of the recipients attended trade shows where they provided their contact information, including fax numbers, to vendors at those events after requesting sales materials. Brigadoon also identified hundreds of recipients

with whom it had prior business arrangements that would have to be examined individually to assess permission to receive fax advertisements. And of course, Brigadoon also identified recipients who appeared on the fax list from multiple sources. At the class certification stage, the court's only task was to determine whether the plaintiff had carried its burden of demonstrating that there was some sufficiently cohesive class-wide way to resolve the permission issue to justify class certification. The district court acted within its discretion in finding that Gorss, which has yet to propose a class-wide method of resolving this issue, failed to meet its burden under the predominance standard.

We add that Gorss's reliance on district court cases to establish a rule that defendants *must* present evidence of permission given by a "significant percentage" of the proposed class to defeat class certification reflects an over-reading of those cases. True, the district court in *Physicians Healthsource* and district courts in other cases found that where defendants presented specific evidence showing that a significant percentage of the putative class consented to certain contacts, issues of individualized consent predominated over any common questions of law or fact. But Gorss conflates that which is *sufficient* to answer the predominance question with that which is *necessary*. Gorss points to no appellate court decision requiring this "significant percentage" evidence, and there are many ways to demonstrate that issues of individualized consent predominate over any common questions as Briga-doon demonstrates here. *See True Health*, 896 F.3d at 931–32 (a defendant can produce evidence of a predominance-defeating consent defense in a variety of ways).

No. 21-1358                                                                        19

In short, Brigadoon's claim of permission was not specula-
tive, vague or unsupported; it was based on a multitude of
contracts, relationships, memberships and personal contacts,
evidence sufficient for the district court to conclude that class-
wide analysis of the permission issue would not be feasible. In
fact, two of our sister circuits have concluded that Gorss
provided prior express permission to approved vendors for
advertising faxes through the 2014 version of its franchise
agreement with Wyndham, an agreement that Gorss signed
after receiving the fax at issue here. *See Gorss Motels, Inc. v.
Lands' End, Inc.*, 997 F.3d 470, 476–80 (2d Cir. 2021); *Gorss
Motels, Inc. v. Safemark Systems, LP*, 931 F.3d 1094, 1100–02 (11th
Cir. 2019). Those courts considered the language of the 2014
franchise agreement that governed at the time each allegedly
offending fax was sent, as well as the vendor programs in place
for franchisees in deciding whether the standard for prior
express permission was met. These cases demonstrate that the
language and nature of a particular franchise agreement as
well as other factors may amount to prior express permission
to receive fax ads as that term is defined. With proposed class
members signing many different franchise agreements with
different franchisors at different times, determining whether
franchisees gave prior express permission for fax advertise-
ments is an individual rather than a common question, or so
the district court could have reasonably found. When a court
also considers the other sources of possible permission that
Brigadoon presented here, such as trade show interactions,
membership in a purchasing network, and prior communica-
tions during business dealings, it becomes all the more appar-

ent that the district court was within its discretion in finding that individual questions predominated.

## C.

The final issue is whether the district court erroneously allowed Brigadoon to rely on permission to Wyndham that was "transferred" to Brigadoon. According to Gorss, for the Wyndham-only class, the court should have found, on a class-wide basis, that any permission that franchisees granted to Wyndham in franchise agreements was not "transferrable" to vendors like Brigadoon. In support of this argument, Gorss cites *Physicians Healthsource*, which rejected the idea that "a company could solicit express prior permission to send fax advertisements, then transfer that permission to a completely different company," finding that "such a practice could eviscerate the entire statutory scheme which is designed to protect consumers from receiving unwanted contact from unknown entities or individuals." *Physicians Healthsource*, 950 F.3d at 967. In that case, the defendant had purchased part of another company's business, and in the process acquired a customer database listing fax numbers. We found that permission to send faxed ads granted to the original company did not transfer to the successor that acquired the contact list in the purchase. 950 F.3d at 967–68.

But we also distinguished that scenario from the circumstances alleged here. In this case, Brigadoon has provided evidence that class members arguably granted permission in franchise agreements to receive faxed advertisements not only from the franchisors but from the franchisors' approved vendors and affiliates. We found that consenting to the ability

of a group of individuals to send faxed ads was distinguishable from permission given to one entity and then transferred to another. *Physicians Healthsource*, 950 F.3d at 968. When permission is granted broadly to a group of possible senders, those senders may be able to demonstrate that the statutory defense of prior express permission or invitation has been met. *See also Gorss*, 997 F.3d at 480–81 (applying the Seventh Circuit's reasoning from *Physicians Healthsource* and concluding that a franchise agreement between Wyndham and Gorss expressly permitted both Wyndham and its affiliates to send faxed advertisements); *Gorss*, 931 F.3d at 1100–02 ("A fax recipient may provide his express permission to receive faxes from third parties, which the hotels did when they agreed in their franchise agreements with Wyndham to receive assistance with purchasing items from Wyndham affiliates."). The district court committed no legal error on the issue of transferred consent.

### III.

At the class certification stage, it was not Brigadoon's burden to prove the merits of its permission defense, which it supported with a viable theory and specific evidence. Rather, it was the plaintiff's burden to demonstrate that common issues of law or fact would predominate when resolving the question of permission later, at the merits stage. The district court did not abuse its discretion in finding that Gorss failed to meet that burden.

AFFIRMED.